[Civ. No. 6370. Third Appellate District.—February 18, 1941.]
THE PEOPLE, ex rel. DEPARTMENT OF PUBLIC WORKS, Appellant, v. LANG TRANSPORTATION CORPORATION (a Corporation) et al., Respondents.

C. C. Carleton, Frank B. Durkee, C. R. Montgomery and Robert E. Reed for Appellant.

Jerome D. Peters and Orville A. Schulenberg for Respondents.

THE COURT.—Plaintiff commenced an action against defendants for damages to a bridge, and from the judgment in favor of defendants this appeal is taken.

For many years prior to October 27, 1936, the date of the accident here in question, the state had maintained a wrought iron, through truss type bridge over the Sacramento River at Red Bluff, as part of its highway system. The bridge consisted of five 153 foot spans with a small pony truss at the easterly end, some 48 feet long. On the day in question the easterly 153 foot span collapsed and fell into the river, carrying with it two trucks and a trailer. One of the trucks was driven by Charles Huron and was owned by Contract Carriers, Inc. The other, a gasoline truck and trailer belonged to Lang Transportation Company, and was operated by Ray Williams.

The People of the State of California brought an action to recover the damage to the bridge, Charles Huron, one of the drivers brought an action for personal injuries, and Contract Carriers, Inc., an action for damage to its truck, all against the Lang Transportation Company and its driver. These several actions were consolidated for trial, but a mistrial was granted as to plaintiff Contract Carriers, Inc. At the conclusion, verdicts were returned in favor of defendants in both

cases. Plaintiff Huron has not appealed, and there is before us now an appeal only by the People from the judgment.

The complaint charged the defendants with the negligent driving of the truck into the bridge, causing it to collapse. The answer denied that allegation, and as separate defenses set up unavoidable accident and contributory negligence.

Upon appeal it is urged the verdict is against law in that the evidence showed the truck and its load exceeded the maximum weight permitted by law; and that there was error in receiving evidence of prior accidents and complaints, and in admitting evidence of precautions taken after the accident and in giving certain instructions.

In considering the first specifications that the truck and load of the Lang Corporation was overweight, it appears from the complaint and answer and the opening statement on behalf of the People that the matter of overweight of the Lang truck was not directly an issue, the action being one for negligently driving the truck into the side of the bridge. It does appear, however, that in the action by Huron against the defendants, the overweight of the truck was directly set up as a cause of the collapse of the bridge, and evidence was introduced upon the consolidated trial by the state to establish the fact of overweight. Upon proper objections the court could have limited the applicability of that evidence to the plaintiff who asserted that particular cause of action, but our attention is directed to no specific objection by the Lang Corporation that the question of overweight was not within any of the issues applicable to the state, nor a request that the jury be so advised as to that matter, and we must assume that the weight of defendant's truck became an issue in the case. However, from our view of the case that appellant failed to prove the Lang trucks were overweight, that issue is not important.

It is conceded that the gross weight of any vehicle with its load permitted on any public highway is 34,000 pounds, and the gross weight of any combination of vehicle is 68,000 pounds. The January, 1936, application for license for the Lang truck gave the unladen weight as 19,250 pounds. At the time of the accident the truck carried 2,590 gallons of gasoline, weighing 16,047.64 pounds, and if the truck weighed 19,250 pounds at the time of the accident, the total weight was 35,297.64 pounds or 1207 pounds in excess of the statutory limit. The trailer and its load was less than 34,000 pounds.

■ If overweight was an issue, the burden of proving overweight was upon the state. ■ In support of that issue plaintiff showed the registered gross weight of the truck in January, 1936, and January, 1937, as 19,250 pounds, and established the weight of the load at the time of the accident.

As against this evidence the road superintendent of the Lang Corporation testified that subsequent to registration in January, 1936, and prior to the accident, the weight of the truck had been lightened "by about one thousand pounds" by a change from a Mack attachment with two sets of dual wheels to a lighter equipment known as a Fager attachment.

W. S. Carson, a driver for the Lang Corporation testified he knew the truck and trailer in question; that in April, 1936, about six months before the accident, the two sets of dual wheels were removed and one set of duals installed, and at the time of the accident, at the rear there was only one tire on each side, which change would lighten the truck "some thousand pounds." The manager of the Sacramento division testified that prior to the accident and after the registration in January, 1936, the six wheel attachment was changed on the truck, making a difference of "approximately 1000 pounds" less in weight of the truck.

C. E. Slaughter, the road superintendent for defendant company testified that after the accident the gas motor was taken out and a Cummings Diesel engine substituted, adding approximately 1,000 pounds to the weight of the truck—thus explaining why the weight of the truck appeared unchanged at the registration periods of 1936 and 1937. This testimony, if accepted and believed by the jury, was sufficient to create a conflict as to the weight of the truck at the time of the accident, and removed that issue from our consideration.

Appellant still claims that accepting the testimony of the witnesses, one of whom testified the substitution of equipment reduced the weight of the truck "some thousand pounds," another said it made a difference of "approximately one thousand pounds," and another "about a thousand pounds," the truck was still 297 pounds in excess of the legal limit. To reach that conclusion, however, appellant must interpret the testimony of the witnesses as meaning a reduction of exactly 1,000 pounds. This, however, was not the testimony, it was approximate, and may have been more or less than 1,000 pounds. Whether, therefore, the issue of the overweight was properly presented as an issue by the pleadings, or whether

the court erred in not more particularly limiting the testimony to a particular party, is no longer material.

It is to be recalled too, that there were two heavily laden trucks upon the bridge at the same time. Huron, the driver of the truck of the ·Contract Carriers, Inc., testified he was traveling east and when he had reached the center of the bridge span in question the Lang truck was approaching him from the west. He immediately put on his brakes and had practically come to a stop. The Lang truck had also slowed down, and the two trucks were almost, if not completely, stopped as the cabs of the two trucks were about even with each other when the span collapsed. Inasmuch as the Contract Carriers' truck weighed about 25,000 pounds it cannot be said as a practical matter that the few hundred pounds overweight, if any, of the Lang truck caused the span to collapse.

It is also contended the Lang truck struck the side of the bridge, thereby causing it to collapse. The testimony as to this point is sharply conflicting. Huron also stated he heard the Lang truck strike the bridge and so stated to his employer and to an officer of the State Highway Patrol. There is some evidence of paint from the Lang truck on the supporting members of the bridge and friction marks on the side of the truck. Pieces of the guard rail were found wedged between the chassis and the truck when the truck was removed from the river bed, but these facts are evidence the jury could, and evidently did, consider in coming to their apparent conclusion the truck did not strike the bridge. There being a substantial conflict upon this issue, the finding of the jury will not be disturbed.

■ Error is claimed in admitting testimony of complaints by citizens of Red Bluff at a time prior to the accident that the bridge was dangerous and that it had been the scene of numerous accidents. The fact of these complaints was brought out on the cross-examination of Mr. Earl Lee Kelly, then the director of public works, and was specifically offered and admitted to show notice to the state of the defective character of the bridge. Upon this theory the evidence was admissible. (*Uttley* v. *City of Santa Ana,* 136 Cal. App. 23 [28 Pac. (2d) 377].)

■ In the minutes of a meeting between the citizens of Red Bluff and the director there were certain statements contained therein referring to prior accidents, but this testi-

mony was not admitted to prove such prior accidents or that the bridge was too narrow. It was merely a report of the proceedings of that meeting. No specific objection was made to these particular objectionable passages nor motions to strike, the only objection made being general and going to the report as a whole. The principle is well established that if a portion of a document is inadmissible in evidence, and the remainder admissible, the objectionable portion cannot be reached by a general objection to the entire document, but the inadmissible portion must be specified. (*Estate of DeLaveaga,* 165 Cal. 607 [133 Pac. 307] ; *Ballos* v. *Natural,* 93 Cal. App. 601 [269 Pac. 972].)

Certain cases such as *Wilkerson* v. *City of El Monte,* 17 Cal. App. (2d) 615 [62 Pac. (2d) 790], and *Thompson* v. *Buffums', Inc.,* 17 Cal. App. (2d) 401 [62 Pac. (2d) 171], are cited by appellant in support of its claim that evidence relating to prior accidents was inadmissible, but in those cases the evidence of prior accidents was offered to prove the dangerous condition of the place, rather than to show notice of the condition.

As pointed out in an annotation in 65 A. L. R., page 380, evidence of prior or subsequent accidents may be offered (1) to prove the existence of a defective or dangerous condition; (2) to prove actionable negligence, and (3) to prove notice, and states that the majority of the more recent and better reasoned cases support the rule that evidence of prior accidents is admissible to prove notice. That has long been the rule in California as shown by *Uttley* v. *City of Santa Ana,* 136 Cal. App. 23 (*supra*) and *Rafferty* v. *City of Marysville,* 207 Cal. 657 [280 Pac. 118]. Here the fact of prior accidents was brought before the jury by the transcript of a meeting between Mr. Kelly and certain citizens of Red Bluff. No motion was made to strike this particular testimony, but aside from that we do not believe it was error to have received it for the purpose for which it was offered.

It is also claimed the court erred in permitting it to be shown that wheel guards had been installed on the bridge after the accident, but appellant invited this testimony when it showed that after the accident certain Lang trucks had safely used the bridge. Upon the theory that long timbers installed as wheel guards had strengthened the bridge, a witness having so testified, respondent was properly permitted to show this to offset the inference of appellant that the

bridge, having been subsequently used by Lang trucks without accident, was not unsafe to proper use.

 An exception is also taken to the ruling of the court in permitting Harvey A. Smith, a licensed structural engineer, to testify as an expert upon the stresses of the bridge. Mr. Smith recounted at some length his experience as a structural engineer. He attended the University of California, worked for about a year in the Division of Architecture, State of California, drawing and designing; had designed various structures, and engaged in general practice as a structural designer, with offices in San Francisco. His entire experience as such structural engineer covered twenty-five or thirty years. It is true his actual experience in the building of bridges was limited to two rather small structures, but it would seem that a structural engineer who had studied stresses and strains of various types of building would be qualified to determine whether a bridge of given dimensions and materials could support a given load, and the trial court so ruled. Mr. Smith was asked as to the strength and quality of certain specific materials but he refused to commit himself as to specific metals stating that that was the province of a metallurgist and that he based his calculations upon certain recognized and established tables of strength of materials as accepted by the American Society for Testing Materials. No one can be a specialist or an expert in all fields, and the witness was within his right in adopting the findings of that recognized society as a basis for his conclusions. The trial court held him qualified, and the ruling of that court upon the qualification of an expert, will not be disturbed unless an abuse of discretion appears. (*People* v. *Hinkle*, 64 Cal. App. 375 [221 Pac. 693]; 27 Cal. Jur. 41 and cases there cited.)

 Appellant also claims the court erred in permitting O. D. Smith, an expert on bridge design, to base his conclusions upon the testimony of the expert on stresses, Harvey A. Smith. Mr. O. D. Smith in testifying as to what the bridge could carry told the court he had not personally computed the stress on the bridge members but had used in his calculations the figures given by Mr. Harvey A. Smith. Appellant objects now upon the theory one expert cannot give testimony based upon the testimony of another expert. (*Howland* v. *Oakland Consolidated etc. Co.*, 110 Cal. 513 [42 Pac. 983].) Regardless of the applicability of this rule there seems to have been no objection to the testimony when given

by Smith on his direct examination, and when it developed his findings were based in part upon the testimony of another expert, no motion was made to strike it out. Such a motion was necessary, for the witness properly testified as to many other matters. At the close of the testimony by Mr. Smith, a motion was made to strike out all of his testimony, but such a motion was too broad, and properly denied. Regardless of that fact, however, we cannot believe such testimony, even if erroneously admitted, could so affect the case as to constitute reversible error.

▮▮▮ The testimony and qualifications of George E. Dalbey, a metallurgist, called as an expert by respondent is also attacked, principally upon the ground that the iron in the bridge had been tested and judged by certain unapproved specifications of the American Society for Testing Materials, rather than the approved or adopted standards. Upon questioning by the court it developed that each year certain tentative specifications are issued by the society and at the end of that year they become the standard specifications for the following year. The witness used the tentative specifications of 1937, and in 1938, when this action was tried, the so-called tentative specifications used by the witness had become standard. We can see no error in thus adopting that standard. The sole purpose of the test was to determine the fitness or unfitness of the material for its particular use. Other objections are urged to the testimony and finding of Dalbey, but we cannot see in them sufficient gravity to justify a reversal, even if true.

▮▮▮ The court gave the following instruction as submitted by plaintiff, but inserted the italicized words, which appellant now contends were erroneous: ''The plaintiff, the People of the State of California, in maintaining the bridge was entitled, *if itself not negligent,* to rely upon the presumption which the law makes, that the law will be obeyed and accordingly was not required to anticipate danger which could come only from a violation of law on the part of another.'' Appellants cite us to *Rodkey* v. *City of Escondido,* 8 Cal. (2d) 685 [67 Pac. (2d) 1053], wherein plaintiff sought damages against the city for personal injuries sustained while driving over a storm drain. It appeared plaintiff was, at the time, traveling at an excessive rate of speed. The court held that a municipality was not bound to maintain its highways in a condition to preclude the possibility of injury or accident and

was not an insurer of the safety of travelers upon its streets, but was obligated only to exercise ordinary care to maintain its streets in a reasonably safe condition for their use in a proper manner. This clearly and concisely expresses the rule, but we cannot see wherein it is not in accord with the principle of law set forth in the instruction. In the cited case it is held the driver would obey the law and slacken his speed in passing through a residential district where the storm drain was installed. If the storm drain had been installed upon the open road and the city had knowledge of its dangerous installation a different conclusion might have been reached. In the instant case there is no admitted negligence upon either the part of the state or the truck company. Impliedly the jury found also that the Lang truck was not overweight, but in any event the state could not negligently maintain a bridge and then avoid liability by proving some violation of the law on the part of another. California does not recognize the rule of comparative negligence and if it were established that both parties were negligent, which negligence proximately contributed to the injury, neither could recover. The state was entitled to the presumption as pointed out in the Rodkey case, *supra,* that the truck company would use due care in traversing the bridge, but the state also was required to use due care in the maintenance of the bridge before it could recover. The instruction might well have been omitted under the facts here, but we see no error in it having been given.

 Appellant also claims the court gave an instruction that in effect shifted the burden of proof of contributory negligence. The instruction told the jury that before it could find against the defendants it must find from the evidence, first, that the defendants were negligent in the operation of the truck, secondly, that by reason of such negligence and as a proximate result thereof, plaintiff sustained damages, and thirdly, that at the time and place in question plaintiff did not proximately contribute to its damage by its own negligence. This instruction did not stand alone. The jury was correctly instructed as to the meaning and effect of preponderance of evidence and the burden of proof, and was clearly told that contributory negligence was an affirmative defense, and that the burden of proving contributory negligence was upon the defendants. The instruction complained of was not attempting to discuss the burden of proof or preponderance of evi-

dence but was merely defining the issues. We cannot believe the jury was misled or confused.

As said in *Hamilton* v. *Hammond Lumber Co.,* 13 Cal. App. (2d) 461 [56 Pac. (2d) 1257]:

"The instructions must be considered in their entirety, and if, as so considered, they state the law of the State fairly and clearly, then they are, as a whole, unobjectionable, even though by selecting isolated passages from single instructions they may in some respect be amenable to just criticism."

What has just been said is also applicable to certain formula instructions, which standing alone might be subject to criticism; but as a whole the jury was fully and fairly instructed, and no miscarriage of justice has resulted from such errors, if any.

Other citations of error are called to our attention. It is claimed the court erred in not striking out the testimony of Dalbey, the expert in metallurgy, because he applied a more severe bending test than that authorized by the specifications of the testing standard. It appears, however, that these tests of bending were started with a smaller pin than specified, but as soon as the iron was started to bend so it would hold in the testing machine, a pin of the required diameter was used. This deviation would not appear to nullify the test, and by bringing the fact of the more severe test before the jury, upon cross-examination, we can assume the jury would take that fact into their deliberations. The refusal to strike out the test was at least not reversible error. The same conclusion can be reached as to the testimony of Mr. Stauffer who lived near the bridge, and was asked to identify certain iron rods taken from the river after the collapse, as parts of the bridge.

This case was strenuously tried by counsel on both sides, and involved many issues and called for considerable technical information. There may have been testimony admitted that could have been omitted, but on the whole, in view of the entire record, the jury seems to have reached a proper determination on the question of responsibility.

The judgment is affirmed.