[Civ. No. 1449. Fourth Appellate District.—December 21, 1933.]

B. UTTLEY, Respondent, v. CITY OF SANTA ANA
(a Municipal Corporation), Appellant.

Clyde C. Downing and L. W. Blodget for Appellant.

Charles D. Swanner for Respondent.

BARNARD, P. J.—This is an appeal from a judgment in favor of the plaintiff in an action for damages for injuries received by the plaintiff about midnight on February 28, 1932. At the intersection of Tenth Street and Broadway, in the City of Santa Ana, there was at that time a dip or depression across Broadway which had been constructed for the purpose of carrying storm waters. It was stipulated that in October, 1931, this dip had been changed by making

the gutter somewhat deeper and by raising the height of one of the shoulders in order to cause the water to flow along Tenth Street instead of along Broadway. It was further stipulated that the condition of the street at this point, as it had existed for three months prior to February 28, 1932, was known to the legislative body of the City of Santa Ana. As an automobile, in which the plaintiff was a guest, was proceeding along Broadway and crossing Tenth Street on the occasion in question, the plaintiff was thrown to the top of the automobile and then fell to the floor of the car, resulting in the injuries which are the basis of this action.

The first point raised is that the complaint is insufficient in that it fails to allege that a claim filed with the city contained the address of the claimant, as required by the statute (Stats. 1931, p. 2475). Paragraph IX of the complaint alleges the filing of a claim with the clerk of the city in all respects as required by the statute, with the exception that it alleges that the claim, as filed, set forth the name of the plaintiff and the name and office address of his attorney. It is insisted that this constitutes a fatal defect in the complaint. No California cases are cited and most of the cases called to our attention are from the state of Washington, where the statute required that a claimant give his residence during the preceding year and not merely his address, as required by our statute. Even in that state it has been held that "it is sufficient, therefore, if the notice or claim is not calculated to mislead, but contains such evidence of identity of place and person as to enable the investigating officials to make proper investigation when aided by reasonable inquiry. When, therefore, there is no evident intention to mislead, but a *bona fide* attempt to comply with the law, the notice is sufficient in the absence of any evidence that it did in fact mislead." (*Wagner* v. *City of Seattle,* 84 Wash. 275 [146 Pac. 621, Ann. Cas. 1916E, 720].) The general rule with respect to this sort of notice of claim is that a substantial compliance with the provisions of the statute is sufficient (19 R. C. L. 1044). The purpose of the statute would seem to be accomplished if an address is given at which or through which the claimant may be found, in order that the city officials may make such investigation of the merits of the claim as may be desired.

The statute does not definitely require the giving of the claimant's home address or usual business address and it is conceivable that a claimant might have neither a home address nor a permanent business address. There is nothing in this complaint to indicate that the address given was not in fact the business address of the claimant. In the absence of any showing that the appellant was misled or prejudiced, we think the allegations of the complaint are sufficient to show a substantial compliance with the statute.

It is next urged that the evidence does not support the verdict in three respects. It is first urged that it conclusively appears that the proximate cause of the accident was the excessive speed at which the driver of the car was proceeding, since there was evidence that the corner of Broadway and Tenth Streets was a blind intersection and the driver of the car testified that he was traveling from twenty-five to thirty miles per hour as he crossed the intersection. The second claim of insufficiency of the evidence is based upon the contention that the street must be held, as a matter of law, to have been safe. These two matters may be treated together. In *Hook* v. *City of Sacramento,* 118 Cal. App. 547 [5 Pac. (2d) 643], it is said: ''No hard-and-fast rule can be laid down in cases of this kind, as to the size or character of the hole or depression in a sidewalk or street that would constitute a dangerous or defective condition within the meaning of the statute, but each case must stand upon its own particular facts. . . . '' If it be conceded that the driver of the automobile was violating the law at the time, a question still remains as to whether the respondent guest, who was dozing on the back seat of the automobile, was responsible for any negligence on the part of the driver. Even though the driver of the car exceeded the speed permissible at a blind intersection, the accident did not arise from the approach of a car along the cross street and it is peculiarly a question of fact as to whether the violation of law or the condition of the street was the proximate cause of the accident. There was evidence that the approach to the dip or depression on one side was at an angle of 45 degrees or more and on the other side was at an angle of about 30 degrees, and that the dip was 12 inches wide at the bottom and about 9 inches deep. It was stipulated that the gutter had recently been deepened and

that one of its shoulders had been made higher in order to force storm waters away from Broadway and along Tenth Street. The city engineer testified that a number of people had spoken to him about the dip and that he had read an article in the paper concerning it. The mayor of the city testified that after the change was made in October, 1931, ''there were complaints coming in that the condition was rough and should be corrected''. The postmaster of the City of Santa Ana testified that he drove over this intersection practically every day and that after the change was made in the dip he took the matter up with the assistant engineer of the city. It was stipulated that one of the superior court judges in that county would testify that he communicated the fact to the mayor that he had observed an accident at this place. Testimony was introduced of other accidents at the place in question (see *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118]; *Gorman* v. *County of Sacramento*, 92 Cal. App. 656 [268 Pac. 1083]). Without further summarizing the evidence it fully appears that it cannot be held, as a matter of law, that the street in question was in a safe condition or that any violation of law on the part of the driver of the automobile was the proximate cause of the injuries received by the respondent.

 The third claim of insufficiency of the evidence is that it contains no proof that funds were available in the city treasury for the purpose of putting this portion of the street in a safe condition or for erecting warning signs. This argument is based upon the inhibition contained in section 18 of article XI of the state Constitution providing that no city shall incur any indebtedness or liability beyond a prescribed limit. It may be observed that even where the constitutional provision referred to has been applied, it has always been held that the lack of funds is a matter of defense only (*Kennedy* v. *City of Gustine*, 199 Cal. 251 [248 Pac. 910]; *Johnson* v. *County of Yuba*, 103 Cal. 538 [37 Pac. 528]). However, the general question is not properly before us at this time as the evidence in this case affirmatively shows that funds were available. A surveyor in the employ of the city testified that changes were made in the street at this point in April or May, 1932, which was after the accident but during the same fiscal year. While this evidence was inadmissible for the purpose of

showing the prior unsafe condition of the street (*Gorman* v. *County of Sacramento, supra*), it was admitted without objection and furnishes some evidence that funds were available, if it could be assumed that any such evidence was necessary.

■ The appellant complains of one instruction given. This instruction consisted of a copy of section 28½ of the California Vehicle Act relating to what constitutes a business district and a residence district, and the presumptions in connection therewith, with a copy of section 116 of the act relating to the posting of signs, and the following:

"You are instructed that unless you find from clear and competent evidence as to the nature of the district at the point of this accident that it was within a business or residence district, then you are instructed that it was presumed not to be within a business or residence district, and the speed limit would then be forty-five miles per hour, subject to the requirement that any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person."

The appellant argues that since this accident happened at an intersection, the reference in this portion of the instruction to the evidence "as to the nature of the district at the point of this accident" must have been taken by the jury as referring to the exact location of the accident at a street intersection, and that the jury was told, in effect, that if they did not find there were signs posted making this a business or residence district, the speed limit at the intersection would be forty-five miles per hour. Strictly speaking, the language used may be susceptible of this interpretation, but, viewing the instructions as a whole, such an interpretation is not reasonable and it can hardly be taken as possible that the jury so regarded it. Many instructions were given covering the various issues raised. Considerable evidence had been introduced with reference to the speed at which the automobile in which the respondent was riding had traveled for a considerable distance before it reached the intersection where the accident oc-

curred, and as to whether or not the driver thereof decreased his speed as he approached that intersection. Covering that phase of the matter the court, in this instruction, read the two sections of the act, adding the portion of the instruction complained of. It is perfectly plain from the context that this part of the instruction referred to the nature of the surrounding district through which the automobile had come and that it was not intended to be limited to the area within the intersection of the streets. This was not a formula instruction and it purported to cover only one phase of the law and related to the surrounding district in general. A little later the court instructed the jury as follows:

"The California Vehicle Act provides that it shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding 15 miles per hour in traversing an intersection of a highway when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last 100 feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of 200 feet from such intersection."

The jury was thus instructed as to the permissible rate of speed in general and also as to the lawful rate at an intersection where the view was obstructed. A further consideration is that regardless of any negligence on the part of the driver of the automobile it is hardly conceivable that the jury could have held the respondent responsible for the speed of the car in view of the undisputed evidence that he was a guest riding in the back seat, that he was dozing, and that he did not know what the speed was as they approached this intersection. While there was some testimony that he came to consciousness some seven blocks before this intersection was reached and that he thought the machine was traveling thirty miles an hour at that time, there is none as to the conditions prevailing at that place and he did not know whether or not the speed was later decreased. The testimony indicates that he was so nearly asleep that he did not know much about what was going on. Under the circumstances it is hardly possible to believe that the jurors, as reasonable persons, were misled by this instruction or that they relied upon it to the ex-

clusion of all other instructions, and thus applied an incorrect rule of law (*Ward* v. *Read,* 219 Cal. 65 [25 Pac. (2d) 821]). After reading all of the evidence we are far from convinced that any miscarriage of justice has occurred.

■ The only other point raised is that the court erred in one ruling on the admission of evidence. While the driver of the car was on the witness-stand he was asked by the appellant's counsel whether he had ever talked with the respondent or his attorney about the accident. He was then asked whether he had ever talked with anyone else about his own liability for the accident. Upon being pressed for an answer he replied that he had talked to his insurance people. Counsel for the appellant then asked the witness several questions relative to who the insurance people were, whether they carried insurance at the time, and whether they had talked to the respondent and to his attorney. Thereafter, counsel for respondent, on redirect examination, asked the witness what his insurance carrier had told him. An objection was overruled and the witness answered "They told me I was not liable." The matter was first gone into by appellant's counsel and the question objected to was apparently asked for the purpose of bringing out the entire conversation. While we think the objection to the question should have been sustained, the question of liability or non-liability on the part of the driver of the car was not very directly involved in this case, and we regard the error as not sufficiently prejudicial to justify a reversal.

The judgment is affirmed.

Jennings, J., and Warmer, J., *pro tem.,* concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1934.