[Civ. No. 25400.   First Dist., Div. Three.   Sept. 18, 1969.]

RICHARD JOHN JANUSCH, Plaintiff and Respondent, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Defendant and Appellant.

Golde & Strellis for Plaintiff and Respondent.

BROWN (H. C.), J.—This is an appeal by the Department of Motor Vehicles from a judgment of the superior court

granting Richard John Janusch's (respondent) petition for writ of mandamus setting aside the department's suspension of his driver's license for refusal to submit to one of the sobriety tests required by Vehicle Code section 13353.

The basis of the trial court's conclusion was the testimony that the officer, in warning respondent of the consequences of refusing a test, told him his license *would probably be revoked* rather than using the positive warning that *it would be revoked,* as stated in Vehicle Code section 13353.

The facts relating to the arrest of respondent for driving a motor vehicle while under the influence of alcohol and of the warnings given by the arresting officer are derived from the transcript of the hearing before the Department of Motor Vehicles. The superior court heard the case and arguments upon that record without further evidence but exercised its independent judgment and made its own findings and conclusion, as it was required to do. (*Walker* v. *Department of Motor Vehicles,* 274 Cal.App.2d 793, 795 [79 Cal.Rptr. 433].)

The record discloses that respondent was observed driving his motor vehicle in an erratic manner by two police officers of the City of Oakland. He was stopped by one of the officers and given the sobriety balance tests at the scene. The officers were of the opinion that he was under the influence of alcohol and placed him under arrest. Respondent was informed by the officer at the scene of the arrest that if he did not submit to one of the three tests (blood, breath or urine), as required by Vehicle Code section 13353, *his driver's license would probably be suspended by the Department of Motor Vehicles.* Respondent was transported to the police station by police vehicle. He was again requested to submit to one of the three tests, *and he was told that if he did not take one of the tests he would lose his license.* In reply, respondent stated that he desired to see his counsel before making a decision.

After some two hours had elapsed and the opportunity had been accorded respondent to make two telephone calls to his attorney, neither of which resulted in reaching the attorney, and one telephone call to his wife, he was informed that because of the elapsed time the efficacy of the tests was diminishing and that further delay in reaching a decision would amount to a refusal. Respondent insisted on seeing his lawyer, and the officer executed the form which sets forth that respondent had been advised of the requirements of Vehicle

Code section 13353 and the consequences of refusal to comply, but respondent had refused to consent to the test.[1]

The trial court found that respondent was arrested for drunk driving; that the officer had reasonable cause to believe respondent had been driving while intoxicated and that the officer had requested respondent to submit to one. of the required tests. However, the court further found that "at the time of said request, said officer failed to warn said . . . [respondent] in a manner sufficient to notify him that his driving privilege would be suspended upon failure to take the test, and therefore, did not properly request him to take a test." The court then concluded that "[t]he warning of the arresting officer failed to conform to the requirements of the Vehicle Code, Section 13353" and that "[t]he . . . [respondent] therefore failed to violate the Vehicle Code, Section 13353." Accordingly, the court issued its judgment granting the petition and permanently staying the decision of the Department of Motor Vehicles.

Respondent argues that the trial court on the review of the Department of Motor Vehicle's proceeding by mandamus made a factual finding that the officer failed to warn him in a manner sufficient to notify him that his driving privilege would be suspended upon failure to take a test. The respondent contends that on appeal this court's function is not to resolve conflicts in the evidence, but is to determine only if there is substantial evidence to support the trial court's finding of the inadequacy of the warning. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20].)

Here, however, there is no conflict in the evidence. The legal premise rather than the evidence is in dispute. The only evidence relating to any defect in the warning concerned the use of the word "probably" by the officer. The court concluded that the officer failed to warn as required by Vehicle Code section 13353.

In *Green* v. *Smith,* 261 Cal.App.2d 392, 397-398 [67 Cal. Rptr. 796], the court stated: "Where a conclusion, whether it

---

[1] Officer Osuna signed the following statement on a form prepared by the Oakland Police Department for officers' statements in cases under Vehicle Code section 13353 which was introduced in evidence at the hearing before the Motor Vehicle Department: "I read the following statement to the arrested person: You are requested to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. A refusal will result in the suspension of your driving privilege for a period of six (6) months."

be characterized as a finding of 'ultimate fact' or a legal conclusion, is drawn from specific probative findings, it cannot stand if it is not supported or is inconsistent with the specific probative findings. [Citations.] The question whether probative facts support the conclusion drawn from them does not involve weighing or resolving conflicts in the evidence or judging the credibility of witnesses. It is a question of law reviewable on appeal. (Cf. *Autry* v. *Republic Productions, Inc.,* 30 Cal.2d 144, 156-157 [180 P.2d 888].)''

It is well settled that the person accused of driving while drunk has no constitutional right to refuse a test designed to produce physical evidence in the form of a breath sample or blood or urine (cf. *People* v. *Zavala,* 239 Cal.App. 2d 732, 738-739 [49 Cal.Rptr. 129]; *People* v. *Dawson,* 184 Cal.App.2d Supp. 881, 883 [7 Cal.Rptr. 384].) whether or not counsel is present. (*People* v. *Gilbert,* 63 Cal.2d 690, 709 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401].) Also, the arrested person is not entitled to consult counsel before submitting to one of the tests and his statement, as here, that he will consent only after such consultation is a refusal under the statute. (See *Finley* v. *Orr,* 262 Cal.App.2d 656, 663 [69 Cal. Rptr. 137].)

The sole question presented is whether the original warning by the police officer that the consequences of the refusal to take one of the tests would be *that respondent would probably have his license suspended by the Department of Motor Vehicles* meets the requirements of section 13353.

We have concluded that the use of the word "probably" did not vitiate compliance with that section.

Webster defines the word "probably" as "insofar as seems reasonably true, factual, or to be expected: so far as fairly convincing evidence or indications go . . . : without much doubt: with practical certainty: very likely: in all probability . . .'' (Webster's New Internat. Dict. (3d ed. 1968).)

The revocation by the Motor Vehicle Department results only after a formal hearing and (a) a showing of probable cause that respondent was arrested while driving under the influence of alcohol, (b) a warning after the making of the arrest, and (c) the refusal to take the test. (*Sidler* v. *Strelecki,* 98 N.J.Super. 530 [237 A.2d 903].) The failure to prove all requirements will result in the license not being revoked despite the failure to take the test.

It is, of course, highly preferable that the warning be stated in the positive terms of the statute, and it is true that the chances of the license being suspended are considerably greater than are the chances of exoneration but that is what the officer indicated. It was probable that the license would be revoked but not positive.[2]

In addition to the warning at the scene of arrest of the probable consequences of a refusal to take one of the required tests, the police gave a second warning to respondent when he was in custody at the police station.

It is not claimed that the two warnings confused respondent, and thus the factual situation here does not fall within that class of cases where the trial court found that respondent was confused by an inconsistency between the first warning and the second warning as occurred in that type of case where the defendant was given a *Miranda* warning of his right to counsel and then the warning under section 13353. (See *Walker* v. *Department of Motor Vehicles, supra,* 274 Cal. App.2d 793, 797; *Rust* v. *Department of Motor Vehicles,* 267 Cal.App.2d 545 [73 Cal.Rptr. 366].) Here there was a consistency in the warnings, i.e., that the ultimate result would be suspension of the license by the Department of Motor Vehicles if respondent persisted in refusing or delaying this test.

We have concluded that the use of the word ''probably'' complied with the Motor Vehicle Code requirements and that it therefore was not inconsistent with the second warning.

We agree with the court's finding that the police officer had probable cause for believing that respondent was driving while under the influence of alcohol; that he was arrested and permission was requested to take the blood, urine or breath test. We differ with the trial court only in that we have concluded that the warnings given by the officer of the penalty for refusal to take one of the tests was adequate.

The judgment is reversed with directions to enter judgment denying the petition for a writ of mandate.

Draper, P. J., and Caldecott, J., concurred.

On September 24, 1969, the opinion was modified to read as printed above.

---

[2]The Attorney General points out in his brief that at the end of 1967 there were 4,300 cases of refusal heard by the Department of Motor Vehicles, and suspension was not imposed in 225 of those cases.