[L.A. No. 29946. In Bank. Apr. 26, 1972.]

RAYMOND LEE DECKER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## Counsel

Evelle J. Younger, Attorney General, and Marilyn Mayer Moffett, Deputy Attorney General, for Defendant and Appellant.

Feldman, Golde & Supancic, Feldman & Golde and Phillip Feldman for Plaintiff and Respondent.

## Opinion

**BURKE, J.**—In May 1970 the Department of Motor Vehicles (hereinafter referred to as "the Department") suspended Raymond Decker's driver's license for six months pursuant to Vehicle Code section 13353[1] on the

---

[1]In April 1970 the Vehicle Code section 13353 provided in pertinent part:

"(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to such

ground that Decker refused to submit to a chemical test to determine the alcoholic content of his blood after he was lawfully arrested for driving under the influence of intoxicating liquor. The superior court issued a peremptory writ of mandamus ordering the Department to set aside its order of suspension, and the Department has appealed. ■ We have concluded that the judgment of the superior court should be affirmed for the reason that Decker was improperly advised of the legal consequence of a refusal to take a chemical test.

Decker was arrested on April 8, 1970. It is undisputed that the arresting officer took Decker to the police station and advised him as follows: "Mr. Decker, you are required by law to take one of three chemical tests of your choice, either of your blood, breath or urine. If you refuse to take one of these three chemical tests of your choice your driving privilege—your driving privileges *could* be suspended for a period of six months." (Cl. Tr., p. 20, italics added.) Decker responded: "Yah, I understand but they won't take my driver's license. I'm not gonna [*sic*]—I won't take any of . . . those tests." (Cl. Tr., p. 18.) No test was administered, and the Department subsequently suspended Decker's license pursuant to section 13353, subdivision (b).

Following its review of the evidence, the trial court found that Decker was not advised that his license *would* be suspended if he refused to take the required chemical tests, but was only advised that his license *could* be so suspended, that a reasonable person in Decker's position would not have understood the mandatory suspension requirement for such refusal, and that Decker did not, in fact, understand such requirement. Accordingly, the court issued mandate to set aside the order of suspension.

As set forth above, subdivision (a) of section 13353 explicitly requires that one such as Decker "be told that his failure to submit to such a chemical test *will* result in . . . suspension . . . ." Moreover, under the express direction of subdivision (b) the Department "shall suspend" the driving privilege of one who refuses to submit to a test. Thus, the advice given to Decker was faulty in two respects: it not only failed to correspond to the

a chemical test will result in the suspension of his privilege to operate a motor car for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath, or urine, and he shall be advised by the officer that he has such choice.

" . . . . . . . . . . . . . . . . . .

"(b) If any such person refuses the officer's request to a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to the test after being requested by the officer, shall suspend the privilege to operate a motor vehicle for a period of six months."

statutory language, but also misrepresented the legal significance of a refusal to take a chemical test by implying that the Department might decide not to suspend Decker's license in spite of his refusal.[2] Decker's response to the officer ("they won't take my driver's license") supports the trial court's finding that Decker was in fact misled in this respect.

The Department urges us to hold that the arresting officer "substantially" complied with the requirements of section 13353. That precise question has, however, already been decided to the contrary in *Giomi* v. *Department of Motor Vehicles, supra,* 15 Cal.App.3d 905, where (as here) the officer advised the driver only that his license "could" be suspended if he failed to take a test. In *Giomi,* the court stated: "Proper warning of the consequence of refusal is one of the elements essential to suspension of license under the code [citation]. We have held that an admonition is adequate if it states that refusal 'would probably' cause suspension [citation] or that 'chances are that you will lose your license' if you refuse [citation]. But in each case we emphasized that the language used adequately conveyed to the driver the strong likelihood that the adverse result would follow upon refusal. The word 'could,' however, carries but a meaning of possibility and in common usage often refers to a result more remote than likely.

". . . . . . . . . . . . . . . . . .

"The statute does require a warning, and we think we reached the ultimate in liberal interpretation in finding 'probably' and 'chances are' to suffice. The language here used reduces the admonition to one of bare possibility, which thus amounts to no warning at all." (15 Cal.App.3d at pp. 906-907.)

We agree with both the rationale and conclusion of the court in *Giomi.* "In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence, prevention." (*People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401].) We should hesitate to sanction a procedure whereby persons suspected of intoxication could be encouraged to forego undertaking a chemical test at the risk of temporary suspension, thereby undermining the policy of the law to detect the intoxicated driver.

---

[2]The arresting officer testified in his understanding the word "could" meant "it's possible." Indeed, the dictionary states that "could" is the past tense of "can," a word indicating an ability to act, as distinguished from the words "would" or "will" which express an intention, custom or habit to act in a particular manner. (See Webster's Seventh New Collegiate Dict. (1969 ed.) pp. 120-121["can"], 190 ["could"], 1021 ["will"], 1031 ["would"]; see also *Giomi* v. *Department of Motor Vehicles,* 15 Cal. App.3d 905 [93 Cal.Rptr. 613].)

The Department points out that suspension is not the *inevitable* result of a refusal to submit to a chemical test, for the failure to establish probable cause for the driver's arrest would bar a suspension. (See *Janusch* v. *Department of Motor Vehicles,* 276 Cal.App.2d 193, 196-197, and fn. 2 [80 Cal.Rptr. 726].) Nevertheless, we believe it would defeat the evident purpose of section 13353, subdivision (a), were the arresting officer permitted to qualify, without explanation, the statutory warning, and thereby mislead the driver concerning the legal realities of the situation.

It is, of course, the trial court's function to determine whether the driver was in fact misled by inaccurate advice, and whether his refusal to submit to a test was a result thereof. (See *Plumb* v. *Department of Motor Vehicles,* 1 Cal.App.3d 256, 261 [81 Cal.Rptr. 639]; *Walker* v. *Department of Motor Vehicles,* 274 Cal.App.2d 793, 799 [79 Cal.Rptr. 433].) In the instant case, as noted above, the trial court properly performed that function, and its findings in Decker's favor are supported by substantial evidence.

The judgment is affirmed.

Wright, C. J., Peters, J., Tobriner, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

Proper warning of the consequences of refusal to comply with Vehicle Code section 13353 is one of the elements essential to suspension of a license under the code. (*Giomi* v. *Department of Motor Vehicles* (1971) 15 Cal.App.3d 905, 906 [93 Cal.Rptr. 613].) While one might prefer such admonition to be letter-perfect in the statutory terms, warnings have been held to be adequate if they state that refusal "would probably" cause suspension (*Janusch* v. *Department of Motor Vehicles* (1969) 276 Cal.App.2d 193, 196 [80 Cal.Rptr. 726]) or that "chances are that you will lose your license" (*Smith* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 499, 503 [81 Cal.Rptr. 800]).

Furthermore, in *Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74 [81 Cal.Rptr. 348, 459 P.2d 900], the police officer was not required to advise an allegedly drunk driver that additional tests may be taken at his own expense, even though the statute so provides. And in *Westmoreland* v. *Chapman* (1968) 268 Cal.App.2d 1 [74 Cal.Rptr. 363], the officer was not obliged to inform the arrestee that a licensed technician was authorized to take a blood specimen from him, even though the statute so provides.

The majority rationalize the foregoing cases expressing approval of substantial rather than literal compliance with the statute by quoting from *Giomi, supra,* that in those instances "the language used adequately con-

veyed to the driver the strong likelihood that the adverse result would follow upon refusal." (*Ante,* p. 906.) I agree: strong likelihood of adverse result should be reflected, but not absolute certainty.

Nearly four decades ago, our courts found substantial compliance with a statute when "there is no evident intention to mislead, but a *bona fide* attempt to comply with the law . . . [and] the absence of any evidence that it did in fact mislead." (*Uttley* v. *City of Santa Ana* (1933) 136 Cal. App. 23, 25 [28 P.2d 377] (hg. den.); also see *Sandstoe* v. *Atchison, T. & S. F. Ry. Co.* (1938) 28 Cal.App.2d 215, 223 [82 P.2d 216] (hg. den.).)

It seems clear to me that the officer here made a bona fide attempt to comply with the law. He prefaced the warning that "Your driving privileges could be suspended for a period of six months" with a statement that "You are *required by law* to take one of three chemical tests of your choice" (italics added). If the use of "could" is deemed to be equivocal, certainly the expression "required by law" adds the element of statutory mandate inevitably followed by sanctions for recalcitrance.

The record is devoid of evidence that Decker was misled. He said he understood the officer; but with the not uncommon bravado of a suspected inebriate, he blustered that "They won't take my driver's license." He then added, "I'm not going to take any of those tests," even though he had been advised the tests were "required by law."

In short, I am convinced that the officer adequately complied with the Vehicle Code section as a matter of law. To return this driver to the highways solely on the majority's distinction between "could" and "would" rewards obstinacy, exalts form over substance, and frustrates the salutary purposes of the license suspension statute. This is, as described by Justice Fleming in his opinion in the instant case in the Court of Appeal ((Cal. App.) 97 Cal.Rptr. 361, 364), a "Pedantic play with words."

I would reverse the judgment.

McComb, J., concurred.