**STATE of Maine**

v.

**Karen GRANVILLE.**

Supreme Judicial Court of Maine.

May 1, 1975.

David M. Cox, County Atty., Bangor, for plaintiff.

Paine, Lynch & Weatherbee by Peter M. Weatherbee, Errol K. Paine, Bangor, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

This appeal from a judgment entered on a jury-waived trial finding of guilty of violation of 29 M.R.S.A. § 1312 (operating a motor vehicle while under the influence of intoxicating liquor), raises a single issue.

The arresting officer testified that after he had placed the defendant under arrest, he read to her from a card as follows:

"You are under arrest for operating a motor vehicle while under the influence of intoxicating liquor. And you are entitled to a blood or breath test for the purpose of determining the alcoholic content of your blood. You must select and designate either the blood or breath test, and I must advise you that your refusal to take the test—one of these tests, blood or breath, requested by me, will result in your license and/or right to operate being suspended. And the expense for any test taken at my request will be paid for by the State."

The question becomes, was this statement sufficient in its content to authorize the admission into evidence of a breathalator test taken after the reading of this statement and after consent to the taking of the breath test was given?

We hold that it was not.

29 M.R.S.A. § 1312 provides in part as follows:

"1. Prerequisites to tests. Before any test specified is given, the law en-

forcement officer shall inform the arrested person of the consequences of his refusal to permit a test at the direction of the law enforcement officer. If the law enforcement officer fails to comply with this prerequisite, any test results shall be inadmissible as evidence in any proceeding before any administrative officer or court of this State."

It is noted the statute employs the plural "consequences." The reference statute provides in part in subsection 2, that

"2. Hearing. If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, none shall be given. The Secretary of State, upon the receipt of a written statement under oath of the arrest of a person for operating or attempting to operate a motor vehicle while under the influence of· intoxicating liquor, and that such person had refused to submit to a chemical test to determine his blood-alcohol level by analysis of his blood or breath, shall immediately notify the person, in writing, as provided in section 2241 that his license or permit and his privilege to operate have been suspended. *Such suspension* shall be for a period of 3 months for a first refusal under this or any prior implied consent provision under Maine law. If such refusal is a 2nd or subsequent refusal under this or any prior implied consent provision under Maine law, such suspension shall be for a period of 6 months."

The statute makes it clear, (a) that a suspension for refusal to take a test is mandatory, (b) that the first refusal to take such test mandates a suspension for a period of 3 months, and (c) that for any second or subsequent refusal to take a test a suspension for a period of 6 months results.

Opinion of the Justices, Me., 255 A.2d 643 (1969), advised the Legislature in response to a question submitted, that if the

reference statute was enacted (which it was) such statutory provision for suspension of the license for refusal to take a test would not be penal in nature since there is no absolute right to obtain and hold an automobile operator's license, but rather it is a privilege which for valid reasons involving public safety may be granted or withheld by the State.

■ Whether such statutory provision be considered penal or merely prohibitory would assume importance if there were ambiguity in the statute. This is so because a penal statute requires a strict construction. Duncan v. State, 158 Me. 265, 183 A.2d 209 (1962).

■ In the case now before us there is no ambiguity in the statute.

■ Its meaning is clear.

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning." Chase v. Edgar, Me., 259 A.2d 30, 32 (1969).

■ The Legislature made it clear by the language used in enacting the statute that the decision to avail oneself of a blood or breath test after one is lawfully arrested for violation of 29 M.R.S.A. § 1312 is upon the person arrested.

■ A consent to the taking of the test must be an informed consent. The statute places on the law enforcement officer the responsibility for informing the person arrested of the critical consequences of refusal to permit a test. By critical consequences, we mean those consequences that are material to an informed judgment. Surely, the length of the suspension period resulting from a refusal to take the test, is a critical consequence. Only after such information is given can it be said there is an informed consent.

The statute itself declares that if the law enforcement officer fails to comply with this prerequisite, i. e., fails to inform the person arrested of the consequences of his refusal to permit a test, the test results shall be inadmissible in evidence.

■ To inform the person arrested only that refusal to take the test will result in "your license and/or right to operate being suspended" cannot be said to be sufficiently informing the person arrested of the consequences. This is so because the consequences enumerated by the statute are, (1) 3 months suspension for first refusal, and (2) 6 months suspension for any second or subsequent refusal.

A person charged with violation of 29 M.R.S.A. § 1312 is faced with the choice of either consenting to take one of the available tests, or refusing to take such test. If he permits a blood or breath test, the results of the test become admissible in evidence, and may result in conviction if they show the alcoholic content of his blood or breath to be at an impermissible level. If he refuses to submit to a test, his license will be suspended regardless of whether or not he is subsequently convicted of the offense charged, although the length of the suspension period will depend upon whether his refusal is a first or second one. Opinion of the Justices, supra.

Conviction of having committed the offense will result not only in the imposition of the criminal penalties provided by 29 M.R.S.A. § 1312(10), but also in the suspension of his license for a period of at least 4 months.

None of the cases that were cited by counsel or that have come to our attention involves a statute in which the directions of the law enforcement officer are set forth with such specificity as our statute. See, for example, O'Connor v. Tofany, 69 Misc.2d 407, 329 N.Y.S.2d 715 (1972).

The rationale of these courts differs somewhat from case to case. Decker v. Department of Motor Vehicles, 6 Cal.3d 903, 101 Cal.Rptr. 387, 495 P.2d 1307 (1972); Harrington v. Tofany, 59 Misc.2d 197, 298 N.Y.S.2d 283 (1969); Buda v. Fulton, 261 Iowa 981, 157 N.W.2d 336 (1968).

We consider the result we have reached to be dictated by the plain, unambiguous terms of our statute. Therein the Legislature has said to enable the person arrested to make an informed judgment he must be told by the law enforcement officer *"the consequences* of his refusal to permit a test."

Finally the Legislature has said

"If the law enforcement officer fails to comply with this prerequisite, any test results shall be inadmissible as evidence in any proceeding before any administrative officer or court of this State." [1]

The test taken was inadmissible.

No claim is made that its admission was harmless error.

Therefore, the entry must be,

Appeal sustained.

WEATHERBEE, J., did not sit.

1. See State v. Shepard, Me., 323 A.2d 587 at 589 (1974).