[Civ. No. 19324. Third Dist. Mar. 17, 1981.]

STEVEN KENNETH ORMONDE, Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

COUNSEL

Drivon & Bakerink, Stewart M. Tabak and Laurence E. Drivon for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Jeffrey L. Gunther, Deputy Attorney General, for Defendant and Respondent.

OPINION

**PARAS, Acting P. J.**—Plaintiff appeals from denial of his petition for a writ of mandamus (Code Civ. Proc., § 1094.5) to compel the Depart-

ment of Motor Vehicles (DMV) to vacate its suspension of his driver's license (Veh. Code, § 13353).

The facts are not in dispute. Patrolman Wolf of the Tracy Police Department stopped the vehicle plaintiff was driving after observing it cross the double yellow line several times within a short distance. After administering a set of field sobriety tests, which plaintiff "failed," Wolf told plaintiff he was being detained for possible drunk driving, placed him in the back seat of his patrol car, and transported him to the police station for chemical testing. On the way to the station, Wolf told plaintiff about the chemical tests and advised him he "could" lose his driver's license if he refused to take one of the tests. He also said if plaintiff "passed" a chemical test he would be released and returned to his vehicle.

When they arrived at the station, Wolf again explained that defendant "could" lose his license if he refused a test. Plaintiff's response was that he wanted to talk to his attorney. Wolf told plaintiff he did not have the right to see an attorney first and repeated the advice before reading the standard admonition, word for word, to plaintiff. The standard admonition states that refusal or failure to take a test "will" result in license suspension. Plaintiff again refused to submit to testing before seeing his attorney, and he was booked.

In his writ application, plaintiff alleged that the word "could," used thrice in the process of advising him of the consequences of refusal to take a test, excused his refusal and made the suspension unlawful. At the superior court hearing, the question of the effect of use of the word "detain" as opposed to "arrest" during the vehicle stop was also pursued, and the parties submitted additional briefs on the subject of the timing of the arrest. The court found Wolf arrested plaintiff at the stop site, and plaintiff's repeated requests to speak to his attorney demonstrated his understanding of his status at that point. It also found that plaintiff's contention of excuse via an inappropriate warning failed under *Smith* v. *Department of Motor Vehicles* (1969) 1 Cal.App.3d 499 [81 Cal.Rptr. 800].

Plaintiff apparently concedes that California courts determine whether or not there has been an arrest by looking to the essential elements of taking into custody, and actual restraint or submission to custody. (See Pen. Code, §§ 834, 835; *People* v. *Parker* (1978) 85 Cal.App.3d 439, 443 [148 Cal.Rptr. 513].) ■ He argues, however, that since license

suspension pursuant to Vehicle Code section 13353 requires a lawful arrest as a prerequisite to chemical test administration, the civil penalty of license suspension should not be imposed unless the arrestee has been specifically informed of the arrest. We see no purpose in adding magic words to the apprehension of drunk drivers, and find substantial evidence in the record to support the findings of DMV and the trial court that plaintiff was arrested at the stop site and knew then that he was arrested.

■ ■ Plaintiff's contention of defective advisement of the consequences of a refusal to submit to a test is also without merit. It is true that the use of the word "could" alone is defective because it reduces the admonition to one of bare possibility, which thus amounts to no warning at all. (*Decker* v. *Department of Motor Vehicles* (1972) 6 Cal. 3d 903 [101 Cal.Rptr. 387, 495 P.2d 1307]; *Giomi* v. *Department of Motor Vehicles* (1971) 15 Cal.App.3d 905 [93 Cal.Rptr. 613].) However, when the specific and accurate warning is given, the later use of less accurate predictions of consequences does not invalidate the advisement. (*Smith* v. *Department of Motor Vehicles, supra*, 1 Cal.App.3d at p. 503.) In view of the strong public policy which led to the adoption of the statute and the obligation of courts to construe it liberally to effect its objectives (see *Bush* v. *Bright* (1968) 264 Cal.App.2d 788 [71 Cal. Rptr. 123]), we agree with the trial court that the sequence of advisements in this case was of no consequence.

The judgment is affirmed.

Evans, J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 13, 1981.