**James J. ROCHE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 14, 1983.
Decided: May 3, 1983.

Louis B. Ferrara, Wilmington, for appellant.

Ferris W. Wharton, Deputy Atty. Gen., Wilmington, for appellee.

Before HERRMANN, C.J., HORSEY and MOORE, JJ.

MOORE, Justice:

James J. Roche appeals his conviction, following trial in the Superior Court, for driving a vehicle while under the influence of intoxicating liquor (21 *Del.C.* § 4177) (DUI). The sole issue raised by Roche is whether police officers, prior to administering intoximeter tests, must advise drivers that if they refuse to take a test, there are various procedural rights available to them before their licenses can be revoked. The trial judge held that it was sufficient to merely advise the suspect that if he did not submit to the test, his license would be revoked for a specified period. We agree and thus affirm the conviction.

## I.

Anyone arrested for DUI is presumed "to have given his consent to submit to a chemical test of his breath, blood or urine for the purpose of determining the alcoholic content of his blood". 21 *Del.C.* § 2740.[1] To avoid violent confrontations between police and recalcitrant suspects, a police officer can not administer the test if the suspect refuses to take the test when asked to do so. 21 *Del.C.* § 2742(a). When the suspect refuses, the policeman must report the refusal to the Department of Motor Vehicles. § 2742(b). Upon receiving that information, the Department notifies the driver that his license has been revoked. § 2742(c). *See* 21 *Del.C.* § 2736. The driver has fourteen days to ask for an administrative hearing, but his request does not automatically stay the revocation. § 2742(c), (d). Four issues are to be decided by the hearing officer:

1) whether the police officer had reasonable grounds to arrest the driver for DUI;

2) whether the person was actually arrested prior to being asked to submit to the test;

1. The statutory scheme described here was in effect when Roche was arrested in 1981. These provisions have been amended by 64 Del.Laws, c. 13, but our analysis of Roche's claim is applicable to the new statutes as well.

3) whether "the person was informed by the arresting officer at the time of the request that his license or privilege to drive a vehicle within the State would be revoked for a period as established in [21 *Del.C.* § 2743(a)] if he refused the test; and"

4) whether the driver did in fact refuse to take the test.

[§ 2742(d)(1)–(4)]. If the hearing officer determines that each issue has been established, then he must order that the person's license be revoked. § 2742(d).

Roche was arrested by the Delaware State Police for DUI and was taken to the state police troop for an intoximeter test. The arresting officer, prior to asking Roche to submit to the test, read the following statement to him:[2]

> I have reason to believe that you have violated Section 4177 of the Motor Vehicle Laws of Delaware by driving, operating or having actual physical control of a motor vehicle while under the influence of intoxicating beverages. You are now under arrest for that violation. I request that you submit to the taking of samples of your breath for the purpose of making chemical tests to determine the content of alcohol in your blood. If you refuse to submit to the test, a report of your refusal will be forwarded to the Motor Vehicle Commissioner who will revoke your license and/or privilege to drive a motor vehicle within this State for a period of one year.

In support of his motion to suppress the test results, Roche testified that after hearing the officer's statement, he refused to take the test. The policeman then explained to him that if he did not consent to the test, he could not be treated as a first offender and receive a conditional license.[3] Roche argued that the officer's failure to inform him

of the procedures under section 2742 misrepresented the results of refusing to take the test. The trial judge rejected this contention and admitted the test results into evidence.

## II.

Roche asserts, as he did at trial, that the statement read to him implies mandatory revocation upon refusing to take an intoximeter test. According to him, this is not the true situation as reflected by the hearing procedure outlined in section 2742. Thus, he concludes that the police misstated the consequences of his refusal, invalidating his consent. The State first responds that the warning actually given parallels the language of section 2742(d). Furthermore, the State claims, that the result urged by Roche would create additional confusion and misunderstanding.

■ Section 2742, by implication, only requires the arresting officer to inform the suspect "that his license or privilege to drive a vehicle within the State would be revoked" for a certain period if he did not take the test. *See* § 2742(d)(3). That particular information is intended to advise the person of "the critical consequences of refusal to permit a test". *State v. Granville,* Me.Supr., 336 A.2d 861, 863 (1975). The decision to submit or refuse to take the intoximeter test is seldom easy or pleasant. But the criminal process "is replete with situations requiring 'the making of difficult judgments' as to which course to follow". *McGautha v. California,* 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) [quoting *McMann v. Richardson,* 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970)]. The General Assembly, through the language of section 2742(d)(3), has indicated that there are only two significant

---

2. The statement was printed on a card and is apparently a standard form used repeatedly.

3. Under 21 *Del.C.* § 4177(e), anyone convicted of a first offense could be required to complete a rehabilitation or instruction program. A first offender also could, at the time of his arraignment, elect to enter an instruction or rehabilita-

tion course. 21 *Del.C.* § 4177B. A conditional license could then be sought 30 days after the person surrendered his revoked license, or the person could apply for a regular license six months after surrender of his original license. 21 *Del.C.* § 4177C.

factors a person should know—and consider—in making this particular decision: one, his license will be revoked if he refuses the test, and two, duration of revocation. The availability of an administrative hearing under section 2742 and the suspect's right to appeal the revocation to the Superior Court under section 2744, in the Legislature's opinion, are not of sufficient importance to the ordinary driver when considering whether or not to take the test. *See also Granville,* 336 A.2d at 863; *Jason v. Melton,* N.Y.App.Div., 60 A.D.2d 707, 400 N.Y.S.2d 878 (1977); *McGuirk v. Fisher,* N.Y.App.Div., 58 A.D.2d 706, 389 N.Y.S.2d 47 (1976). *Cf. Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (knowledge of right to refuse is not essential part of proving effective consent to search).

Finally, Roche suggests that his case is analogous to *State v. Purcell,* Del.Super., 336 A.2d 223 (1975). The police officer in that case had advised the defendant of the implied consent law (21 *Del.C.* § 2740) and told him that his refusal to take an intoximeter test would result in the loss of his license for six months. *Id.* at 224. The court held that the defendant's consent to the test was based on a false premise, i.e., the applicability of section 2740, and was therefore involuntary. *Id.* at 227. Roche claims that his consent was grounded on the false impression that license revocation was mandatory upon refusing to take the test.

The false information in *Purcell* was the police officer's claim that the implied consent law applied when, as a matter of law, it did not. *See also Bertomeu v. State,* Del.Supr., 310 A.2d 865 (1973). *Cf. Bumper v. North Carolina,* 391 U.S. 543, 549–50 & n. 14, 88 S.Ct. 1788, 1792 & n. 14, 20 L.Ed.2d 797 (1968) (claim of authority to search house with warrant implies that occupant has no right to resist). Here, there is no question that the police had the authority to ask Roche to participate in the intoximeter

test. *Purcell* is therefore inapposite. The warnings given by the police in the exercise of that authority were sufficient under Delaware law.[4]

\* \* \*

AFFIRMED.

---

4. The United States Supreme Court has held that the police are not required, as a matter of federal constitutional law, to tell a suspect of the consequences of refusing to take a breath or blood test. *South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 923–24, 74 L.Ed.2d 748 (1983). The result we reach here is consistent with *Neville.*