[No. D003249. Fourth Dist., Div. One. Nov. 10, 1986.]

JOSEPH CHARLES DALY, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

258

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Appellant.

Espinosa & Espinosa and Robert A. Espinosa for Plaintiff and Respondent.

---

OPINION

BUTLER, J.—Deputy Sheriff Kathleen Coffey arrested Joseph Charles Daly for drunk driving. At the jail, she admonished Daly his refusal to submit to a chemical test to determine blood-alcohol content would result in suspension of his driving license for six months. Daly had a prior drunk driving conviction authorizing a one-year suspension for failure to submit to testing. Coffey did not admonish Daly as to that consequence. Daley did not submit to testing.

The Department of Motor Vehicles (Department) suspended Daly's driver's license. He requested a hearing. The hearing officer found Daly was lawfully arrested and that he refused to take any of the tests. Because Coffey failed to admonish Daly the prior would result in a one-year suspension, the hearing officer recommended Daly's license "be suspended for six months only under the provisions of Section 13353 of the California Vehicle Code."[1] The Department suspended Daly's license for six months.

The court granted Daly's petition for a writ of mandate and lifted the suspension, finding (1) Coffey admonished Daly his failure to take any of the tests would result in a six-month suspension, (2) Coffey failed to warn Daly such failure would result in a one-year suspension as he had a prior conviction within the past five years, and (3) Coffey's failure to admonish as to the one-year suspension required vacating the six-month suspension.

Appealing, the Department argues the judge erred when he precluded sanctions altogether because the admonition spoke only to a six-month suspension, contending common sense and public policy authorize that suspension as Daly was warned the license would be suspended for six months. We shall conclude the six-month admonishment did not divest the Department of its duty to suspend Daly's license and the six-month suspension was a valid order. We shall reverse and remand with instructions to cause the Department to suspend Daly's license for six months.

I

Section 13353, subdivision (a)(1),[2] as effective at times relevant, provided in pertinent part: "Any person who drives a motor vehicle shall

---

[1]All statutory references are to the Vehicle Code unless otherwise specified.

[2]Statutes 1985, chapter 735, section 2, and chapter 1330, section 2, effective January 1, 1986, amended this section to reflect the enactment of section 23157 (Stats. 1985, ch. 735, § 5, and ch. 1330, § 3) which now includes the consent to chemical testing formerly included in section 13353. Section 23157 now relates to refusal to submit to tests.

be deemed to have given his or her consent to chemical testing of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood, and to have given his or her consent to chemical testing of his or her blood or urine for the purpose of determining the drug content of his or her blood, if lawfully arrested for any offense allegedly committed in violation of Section 23152 or 23153. The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23152 or 23153. The person shall be told that his or her failure to submit to, or the noncompletion of, the required chemical testing will result in the suspension of the person's privilege to operate a motor vehicle for a period of six months, or for a period of one year if the person has previously been convicted of a violation of Section 23152, 23153, or 23103 as specified in Section 23103.5 within five years of the date of the refusal."

Section 13353, subdivision (b), goes on to provide upon a prescribed notice of refusal to submit to a chemical test: "the department shall suspend the person's privilege to operate a motor vehicle for a period of six months, or for a period of one year if the person has previously been convicted of a violation of Section 23152, 23153, or 23103 as specified in Section 23103.5 within five years of the date of the refusal. . . ." After a requested hearing, if the Department determines to suspend the affected person's privilege to operate a motor vehicle, the suspension does not become effective until five days after receipt of suspension notice (§ 13353, subd. (c)(3)).

## II

After a police officer lawfully arrests a person for driving under the influence of alcohol, the officer must warn the person he or she has to submit to chemical testing, and refusal to do so results in a suspension of the driver's license. The warning must not be speculative and must be couched in mandatory language. If a court finds the warning to be inadequate, it will vacate the order to suspend the license. (*Decker* v. *Department of Motor Vehicles* (1972) 6 Cal.3d 903 [101 Cal.Rptr. 387, 495 P.2d 1307]; *Giomi* v. *Department of Motor Vehicles* (1971) 15 Cal.App.3d 905 [93 Cal.Rptr. 613].) In *Decker* and *Giomi,* the courts vacated suspensions of license because the warnings given there reduced "'the admonition to one of bare possibility, which thus amounts to no warning at all.'" (*Decker, supra,* at p. 906, quoting *Giomi, supra,* at p. 907; see also *Thompson* v. *Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 360 [165 Cal.Rptr. 626].)

The implied consent statute "is perhaps a paradigm example of a classic 'health and safety' police power measure, clearly enacted by the

Legislature to foster the safety of the public in the use of the state's highways." (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 76 [177 Cal.Rptr. 566, 634 P.2d 917].) It was passed "to eliminate the carnage on our highways caused by those who drive after drinking excessively" (*Behan* v. *Alexis* (1981) 116 Cal.App.3d 403, 407 [172 Cal.Rptr. 132]) and "was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of [such] drunken driving." (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]; *Hernandez* v. *Department of Motor Vehicles, supra,* 30 Cal.3d 70 at p. 77.) The state has a strong interest in obtaining evidence of a person's blood-alcohol content at the time of an arrest. The alternative presented to a person stopped because the police officer has reasonable cause to believe the person is driving under the influence of drugs or alcohol (§§ 23152, 23153), i.e., either take a test or have your driver's license suspended, avoids the violence which may occur if a recalcitrant and belligerent person refuses testing; it gives peace officers a tool of enforcement not involving physical compulsion. (*Hernandez* v. *Department of Motor Vehicles, supra,* at p. 77; *Anderson* v. *Cozens* (1976) 60 Cal.App.3d 130, 143 [131 Cal.Rptr. 256].)

The law must be liberally construed to effect its purposes (*Lee* v. *Department of Motor Vehicles* (1983) 142 Cal.App.3d 275, 282 [191 Cal.Rptr. 23]; *Ormonde* v. *Department of Motor Vehicles* (1981) 117 Cal.App.3d 889, 893 [173 Cal.Rptr. 79]) and we should avoid creating exceptions and refrain from interference in the enforcement of the statute (*McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662-663 [119 Cal.Rptr. 804]).

The suspension of a driver's license even for six months may have profound and obvious effects on one's life situation constituting a severe economic and personal hardship. ▮ Thus, a driver's license is a fundamental right requiring the exercise by the court of its independent judgment in reviewing the administrative proceedings leading to a suspension. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398 [188 Cal.Rptr. 891, 657 P.2d 383].) ▮ An equivocal admonition the failure to take a chemical test "could" result in suspension of driving privileges is insufficient (*Decker* v. *Department of Motor Vehicles, supra,* 6 Cal.3d 903 at p. 906) and the use of the words "probably" and "chances are" suggestive of license suspension for failure to be tested amounts to a failure to admonish (*Giomi* v. *Department of Motor Vehicles, supra,* 15 Cal.App.3d 905 at p. 907).

Proper warning of the consequence of refusal is an element essential to the suspension of a driver's license. (*Janusch* v. *Department of Motor Vehicles* (1969) 276 Cal.App.2d 193, 196 [80 Cal.Rptr. 726].)

While an equivocal admonition which does not mislead or confuse may warrant license suspension (see *Decker* v. *Department of Motor Vehicles, supra,* 6 Cal.3d 903 at pp. 907-908), here the arresting officer failed to admonish Daly his license would be suspended for one year for failure to take the test if he had a prior conviction within the past five years. The failure so to admonish was not equivocal; it was simply not given. What was given was an admonition of a six-month suspension. Daly was not misled or confused by that warning—his license could be suspended. The only omission was a failure to inform him of the one-year consequence. The omission is not a sufficient reason to erase the six-month suspension. Our conclusion is consistent with the strong public policy implicit in California's drunk driving laws to deter the drinking driver by requiring the tests under the sanction of license suspension. Our holding does not read out of former section 13353, subdivision (a)(1) the legislative mandate the "person shall be told that his or her failure to submit to, or the noncompletion of, the required chemical testing will result" in the suspension of his license. It only limits the suspension to the period of the warning.

Judgment reversed with instructions to cause the Department to suspend Daly's license for six months.

Wiener, Acting P. J., and Work, J., concurred.