Filed 4/23/15  McKeown v. DMV CA4/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ANDREW JAMES MCKEOWN, Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent. | D065776 (Super. Ct. No. 37-2013-00079058-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa Schall, Judge.  Affirmed.

Andrew McKeown, in pro. per., for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Christine Mersten and Elizabeth Vann, Deputy Attorneys General, for Defendant and Respondent.

Andrew James McKeown appeals a judgment denying his petition for writ of mandate challenging the one-year suspension of his driver's license by the State of California Department of Motor Vehicles (DMV) for refusing to take a chemical test to

determine the alcohol content of his blood.  On appeal, McKeown contends: (1) the evidence is insufficient to support the trial court's finding that his vehicle was observed to abruptly slow, drift to the left, and almost strike a curb; (2) even if there is substantial evidence to support that finding, there was no reasonable suspicion for the officer to stop his vehicle; (3) the officer's failure to fully admonish him pursuant to Vehicle Code[1] section 23612 requires reversal of his license suspension; and (4) the evidence is insufficient to support a finding he was unruly and argumentative during the officer's admonition and, in any event, that conduct did not excuse the officer from fully admonishing him pursuant to section 23612.  Because, as explained below, we conclude McKeown was properly stopped and adequately admonished pursuant to section 23612 in the circumstances of this case, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

At about 12:10 a.m. on April 20, 2013, California Highway Patrol (CHP) Officer Jorge Mellos was driving westbound on I-8 in a marked patrol car.  A gray Honda Civic was about 300 feet in front of his vehicle and there was one vehicle between them.  As the Honda entered the transition road to I-5 northbound, Mellos saw it abruptly slow and then drift to the left as it negotiated the right turn, almost striking the road's left concrete curb.  Mellos then initiated a traffic stop of the Honda and directed its driver to pull off of the freeway at the Clairemont Drive exit.

---

[1]     All statutory references are to the Vehicle Code.

After the vehicles stopped, Mellos approached McKeown, the Honda's driver, and asked for his driver's license, vehicle registration, and proof of insurance. McKeown's movements were slow and he dropped his documents as he tried to hand them to Mellos. McKeown's eyes were red and watery, his speech was slurred, and a strong odor of alcohol emitted from the Honda. When Mellos asked McKeown to walk to the side of his patrol vehicle, he saw McKeown had an unsteady gait. Mellos began asking McKeown some pre-field sobriety test (FST) questions, but McKeown refused to answer any of them and declined to complete any of the FST's. Mellos smelled a strong odor of alcohol emitting from McKeown's breath and person. When McKeown became verbally aggressive, Mellos called for assistance from backup officers. Based on McKeown's driving and objective signs of intoxication, Mellos formed the opinion he was driving under the influence of alcohol and placed him under arrest at 12:20 a.m. At the scene, Mellos advised McKeown of the implied consent law (i.e., § 23612) by briefly informing him what would happen if he did not submit to a chemical test. McKeown then stated he would not submit to a test.

At about 12:45 a.m., after transporting McKeown to a CHP area office, Mellos twice attempted to read verbatim the admonition set forth on Form DS 367, but was interrupted by McKeown both times. Mellos marked on the form how far he had read each time before being interrupted. The first time Mellos admonished McKeown as follows:

3

"1. You are required by state law to submit to a PAS (DUI Probation) or other chemical test to determine the alcohol and/or drug content of your blood.

"2. . . . a. Because I believe you are under the influence of alcohol, you have a choice of taking a breath or blood test. [¶] . . . [¶]

"3. If you refuse to submit to, or fail to complete[,] a test, your driving privilege will be suspended for one year or revoked for two or three years."

The second time Mellos attempted to read the admonitions on Form DS 367, he read the language quoted above and, in addition, read the following language: "A second offense within ten years of a separate violation of driving under the influence" before he was interrupted again by McKeown. Mellos did not read the remainder of the admonitions on Form DS 367.[2] When Mellos then asked McKeown whether he would take a breath test, McKeown replied, "I won't[,] sir." When asked whether he would take a blood test, McKeown replied, "No[,] sir." When Mellos informed McKeown his driver's license was

_____

2      The remaining language of the admonitions on Form DS 367 is as follows: "including such a charge reduced to reckless driving, or vehicular manslaughter, or a violation of Section 23140 CVC, which resulted in a conviction, or separate administrative determination that you were driving with a BAC of 0.01% of more while under age 21, or a separate administrative determination that you were driving with a BAC of 0.01% or more while on DUI probation, or a BAC of 0.04% or more while operating a commercial motor vehicle, or a BAC of 0.08% or more at any age, or you refused a test, will result in a two-year revocation. Three or more offenses within ten years of any combination of the above violations, convictions or separate administrative determinations will result in a three-year revocation. [¶] 4. Refusal or failure to complete a test may be used against you in court. Refusal or failure to complete a test will also result in a fine and imprisonment if this arrest results in a conviction of driving under the influence. [¶] 5. You do not have the right to talk to an attorney or have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the test. [¶] 6. If you cannot, or state you cannot, complete the test you choose, you must submit to and complete a remaining test."

4

going to be suspended if he did not submit to a chemical test, McKeown again stated he would not submit to a breath or blood test.

An administrative hearing was held before a DMV hearing officer to determine whether McKeown's driver's license should be suspended for his refusal to take a chemical test to determine the alcohol content of his blood. The hearing officer admitted documentary evidence, including Form DS 367 and Mellos's arrest report. McKeown testified at the hearing, explaining he became disoriented driving on I-8 when his GPS system instructed him to take the southbound transition road to I-5 rather than the northbound road he was on. He stated that after he was taken to the CHP office, Mellos tried to read a statement to him, but kept stuttering and stammering and "could not get through the statement." He stated Mellos got frustrated and never definitively asked him any question. McKeown implicitly admitted he kept interrupting Mellos, stating he told Mellos he did not know what he was saying. McKeown admitted he was argumentative and stubborn after he was stopped by Mellos and tried to convince him he had not had anything to drink that day.

Mellos testified at the hearing that he first noticed McKeown's vehicle when he took the transition road and saw that vehicle drift to the left and almost strike the left curb. Mellos stated that if he was stuttering during his reading of the admonition it was because McKeown was talking while he tried to read it.

At the close of the hearing, McKeown's counsel submitted the mobile video audio recording system (MVARS) video recording from Mellos's vehicle, showing McKeown's

5

vehicle drifting left after Mellos began recording the event. However, the recording does not appear to show the abrupt slowing of McKeown's vehicle that initially caught Mellos's attention. Nevertheless, it does appear to show his vehicle again abruptly slowing while on the transition road.

On August 16, 2013, the DMV hearing officer issued a notification of findings and decision suspending McKeown's driver's license for a period of one year for his refusal to take a chemical test to determine his blood alcohol level. The hearing officer found Mellos had probable cause to stop McKeown's vehicle because he observed it slow abruptly as it entered the transition road, drift to the left as it negotiated the right turn on the transition road, and almost strike the left curb. On the issue of whether McKeown was admonished his driver's license would be suspended or revoked if he refused or failed to complete a required chemical test to determine the alcohol content of his blood, the hearing officer found McKeown's "unruly and argumentative" conduct during Mellos's admonition prevented Mellos "from completing the warning that a refusal would result in a license withdrawal action." The hearing officer concluded McKeown's behavior "prevented the full admonishment and does not excuse the confusion he claims, which he induced." She concluded McKeown *was* told that his driving privilege would be suspended or revoked if he refused to complete the required testing. Because McKeown was lawfully stopped and arrested, properly admonished that his driving privilege would be suspended or revoked if he refused to complete the required testing,

6

and refused to complete the chemical test after being requested to do so by Mellos, the hearing officer suspended McKeown's driver's license for a period of one year.

McKeown then filed the instant petition for writ of mandate challenging the DMV's suspension of his driver's license for refusing to take the chemical test to determine the alcohol content of his blood. On March 21, 2014, the trial court denied the petition.[3] McKeown timely filed a notice of appeal.

DISCUSSION

I

*Standards of Review*

"In ruling on an application for a writ of mandate following an order of suspension or revocation, a trial court is required to determine, based on its independent judgment, ' "whether the weight of the evidence supported the administrative decision." ' [Citations.] . . . On appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.] ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as

---

[3] Because McKeown did not make the reporter's transcript of the trial court proceedings a part of the record on appeal, we are unable to consider any reasons the court may have cited for its decision.

7

a matter of law to sustain those findings. [Citation.]" ' " (*Lake v. Reed* (1997) 16 Cal.4th 448, 456-457.)

However, if the facts are undisputed and the issue involves the correct application of a statute or administrative regulation, we consider that question of law de novo and are not bound by the trial court's legal determination. (*Roze v. Department of Motor Vehicles* (2006) 141 Cal.App.4th 1176, 1184; *Payne v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 1514, 1517; *Carrey v. Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270 (*Carrey*).)

II

*Substantial Evidence to Support Finding That McKeown's Vehicle*
*Abruptly Slowed, Drifted to the Left, and Almost Struck the Curb*

McKeown contends the evidence is insufficient to support the trial court's implied finding that Mellos observed his vehicle abruptly slow, drift to the left, and almost strike the curb. He argues Mellos did not testify at the hearing, and the MVARS does not show, that his vehicle slowed abruptly as it entered the transition road. However, Mellos's sworn statement on Form DS 367, admitted at the hearing, expressly stated he noticed the gray Honda Civic "slowed abruptly as it entered the transition road." Therefore, contrary to McKeown's assertion, there is substantial evidence to support a finding his vehicle abruptly slowed. The fact the MVARS recording did not necessarily show the initial abrupt slowing by McKeown's vehicle does not disprove Mellos's statement. Rather, it can be reasonably inferred Mellos may not have begun recording on the MVARS until

8

the initial abrupt slowing by McKeown's vehicle attracted his attention and therefore the recording included only events that occurred after that abrupt slowing.[4]

Furthermore, contrary to McKeown's assertion, there is also substantial evidence to support a finding his vehicle thereafter drifted to the left and almost struck the left curb. Mellos's sworn statement stated the gray Honda Civic "drifted to the left as it negotiated the right turn on the transition road and its left side tires almost struck the concrete curb located along the left side of the transition road." Mellos also testified at the hearing that McKeown's vehicle "drifted to the left and almost struck the concrete curb located on the left side of the transition road almost at the end of the transition road . . . ." There is substantial evidence to support a finding McKeown's vehicle abruptly slowed, drifted to the left, and almost struck the curb. (*Lake v. Reed*, *supra*, 16 Cal.4th at pp. 456-457.)

III

*Reasonable Suspicion to Stop McKeown's Vehicle*

McKeown contends that even if there is substantial evidence to support the finding that his vehicle abruptly slowed, drifted to the left, and almost struck a curb, there

---

4      We also note, as the People argue, the MVARS recording does show subsequent abrupt slowing by McKeown's vehicle. Our independent viewing of the recording shows that at about two seconds into the recording the vehicle in between Mellos's patrol vehicle and McKeown's vehicle applies its brake lights, thereby supporting an inference McKeown's vehicle abruptly slowed and caused the driver of the vehicle in between to apply its brakes. Mellos's arrest report confirms that the MVARS recording "was activated during the event" and "may or may not have captured all information relevant to the event."

nevertheless was no reasonable suspicion for Mellos to stop his vehicle. He argues that case law supports a finding of reasonable suspicion to stop a vehicle in such circumstances only when it "weaves" back and forth in a lane and not when it only "drifts" to one side of a lane. However, we conclude Mellos had reasonable suspicion to stop McKeown's vehicle based not only on a single "drift" to the left, but also its initial abrupt slowing and almost striking the curb in the circumstances of this case.

A

Under the Fourth Amendment, a police officer may stop and detain for investigation a motorist on reasonable suspicion that the driver has violated the law. (*Ornelas v. U.S.* (1996) 517 U.S. 690, 693; *People v. Dolly* (2007) 40 Cal.4th 458, 463.) "[A]n officer may stop and briefly detain a suspect for questioning for a limited investigation even if the circumstances fall short of probable cause to arrest." (*Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 509 (*Brierton*).) Reasonable suspicion that criminal conduct has occurred "requires that officer to be able to 'point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' " (*Ibid*.) Erratic driving that does not constitute a traffic violation may justify an officer to stop a vehicle. (*People v. Russell* (2000) 81 Cal.App.4th 96, 102.)

In *Arburn v. Department of Motor Vehicles* (2007) 151 Cal.App.4th 1480, the court discussed cases holding there is reasonable suspicion to stop a vehicle when it is

10

seen "weaving" within a lane. (*Id*. at p. 1485.) *Arburn* stated: "More than one California court has found that 'weaving' within a lane provides sufficient cause to conduct an investigatory stop." (*Ibid*.) In the circumstances of that case, the officer reported the vehicle was weaving (i.e., moving back and forth) in the lane and almost struck a curb. (*Id*. at p. 1484.) *Arburn* concluded the lack of evidence that the vehicle was weaving over a substantial or considerable distance did not preclude a finding of reasonable suspicion to stop its driver for investigation. (*Id*. at p. 1485.) It stated "the distance of observation is not a controlling factor in evaluating a traffic stop." (*Id*. at pp. 1485-1486.)

## B

McKeown correctly asserts the circumstances in his case are distinguishable from *Arburn* and other "swerving" cases. Here, there is nothing to support a finding that McKeown's vehicle "swerved" in a lane. However, the absence of swerving does not preclude the existence of reasonable suspicion if the totality of the circumstances supports an objective manifestation that the driver may have violated the law (e.g., by driving under the influence of alcohol). (*Brierton*, *supra*, 130 Cal.App.4th at p. 509.)

In this case, Mellos observed McKeown's vehicle abruptly slow, drift to the left, and almost strike the left curb of the transition road. Contrary to McKeown's assertion, we conclude that observed conduct supports an objective manifestation that he may have violated the law. (*Brierton,* at p. 509.) *Arburn* did *not* expressly or implicitly hold, as McKeown asserts, that a single swerve, or a drift in one direction, cannot support a finding of reasonable suspicion when there are other circumstances, such as in this case,

11

supporting an objective belief that the driver may have violated the law. Furthermore, contrary to McKeown's assertion, we cannot conclude that "almost striking the curb" is not a clear and articulable fact that, when combined with the other clear and articulable facts in this case, could not support a finding of reasonable suspicion. In this case, the adverb "almost" indicates a close proximity to the curb that most properly driven vehicles avoid. A vehicle need not actually strike a curb to support reasonable suspicion when other circumstances support an objective manifestation that its driver may have violated the law. Based on our independent review of the record, we conclude that in the circumstances of this case Mellos had reasonable suspicion to stop McKeown's vehicle and conduct a limited investigation to determine whether he had violated the law. (*Ornelas v. U.S.*, *supra*, 517 U.S. at p. 693; *People v. Dolly*, *supra*, 40 Cal.4th at p. 463; *Brierton*, at p. 509.)

IV

*Section 23612 Admonitions*

McKeown contends Mellos's failure to fully admonish him pursuant to section 23612, as summarized on Form DS 367, requires reversal of the DMV's suspension of his driver's license for one year. The record shows, and the parties agree, that Mellos did not fully admonish McKeown pursuant to section 23612 by reading verbatim the entirety of the Form DS 367 admonitions. Rather, after McKeown's arrest, Mellos read only those portions of the Form DS 367 admonitions, as quoted above, before abandoning efforts to read the remainder of those admonitions because of McKeown's repeated interruptions.

12

A

Section 23612 sets forth California's "implied consent" law, providing that a "person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcohol content of his or her blood, if lawfully arrested for an offense [involving driving under the influence of alcohol]." (§ 23612, subd. (a)(1)(A).) "By choosing to use the highways, drivers voluntarily bring themselves under the regulation of the implied consent law." (*People v. Harris* (2014) 225 Cal.App.4th Supp. 1, 8.) The chemical testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the driver was under the influence of alcohol. (§ 23612, subd. (a)(1)(C).) The officer shall inform the driver that his or her failure to submit to the required chemical testing will result in a fine and suspension or revocation of driving privileges. (§ 23612, subd. (a)(1)(D).)[5] A driver lawfully arrested for driving

_____

[5]     Section 23612, subdivision (a)(1)(D), provides: "The person shall be told that his or her failure to submit to, or the failure to complete, the required chemical testing will result in a fine, mandatory imprisonment if the person is convicted of a violation of Section 23152 or 23153, and (i) the suspension of the person's privilege to operate a motor vehicle for a period of one year, (ii) the revocation of the person's privilege to operate a motor vehicle for a period of two years if the refusal occurs within 10 years of a separate violation of Section 23101 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code that resulted in a conviction, or if the person's privilege to operate a motor vehicle has been suspended or revoked pursuant to Section 13353, 13353.1, or 13353.2 for an offense that occurred on a separate occasion, or (iii) the revocation of the person's privilege to operate a motor vehicle for a period of three years if the refusal occurs within 10 years of two or more separate violations of Section 23103 as specified in Section 23103.5, or of Section 23140, 23152, or 23153 of this code, or of Section 191.5 or subdivision (a) of Section 192.5 of the Penal Code, or any combination thereof, that

13

under the influence of alcohol has the choice of a breath or blood test, and the officer "shall advise the person that he or she has that choice."  (§ 23612, subd. (a)(2).)  However, if the driver is incapable of completing the chosen test, he or she must submit to the remaining test.  (§ 23612, subd. (a)(2).)  "The officer shall also advise the person that he or she does not have the right to have an attorney present before stating whether he or she will submit to a test or tests, before deciding which test or tests to take, or during administration of the test or tests chosen, and that, in the event of refusal to submit to a test or tests, the refusal may be used against him or her in a court of law."  (§ 23612, subd. (a)(4).)

Before the DMV may suspend a person's driver's license for failure to submit to a chemical test under section 23612, it must make four findings: (1) the officer had reasonable cause to believe the driver was driving under the influence; (2) the driver was arrested; (3) the driver refused to submit to or complete the chemical test; and (4) the officer advised the driver that his or her driver's license would be suspended if he or she failed to submit to or complete the chemical test.  (§ 13353, subd. (a)[6]; *Hughey v.*

---

resulted in convictions, or if the person's privilege to operate a motor vehicle has been suspended or revoked two or more times pursuant to Section 13353, 13353.1, or 13353.2 for offenses that occurred on separate occasions, or if there is any combination of those convictions, administrative suspensions, or revocations."

[6]      Section 13353, subdivision (a), provides: "If a person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to, or did not complete, the test or tests after

14

*Department of Motor Vehicles* (1991) 235 Cal.App.3d 752, 757-758.) Accordingly, proper warning of the consequence of refusal to submit to a chemical test is an essential element to the suspension of a driver's license. (*Daly v. Department of Motor Vehicles* (1986) 187 Cal.App.3d 257, 261 (*Daly*); *Janusch v. Department of Motor Vehicles* (1969) 276 Cal.App.2d 193, 196 (*Janusch*).)

Statutes must be given a reasonable and common sense construction in accordance with their apparent purpose and legislative intent. (*Bush v. Bright* (1968) 264 Cal.App.2d 788, 792.) Remedial statutes, like section 13353, must be liberally construed to effect their purposes and should not be given a narrow construction that might impair their remedial effect. (*Bush,* at p. 792; *Lee v. Department of Motor Vehicles* (1983) 142 Cal.App.3d 275, 282.) "[W]e should avoid creating exceptions and refrain from interference in the enforcement of the statute [citation]." (*Daly*, *supra*, 187 Cal.App.3d at p. 261.) The implied consent statute is an exercise by the Legislature of its health and safety police power to foster the safety of the public on state highways. (*Id*. at pp. 260-261.) "There is a strong public policy against the nightmare of drunk driving. Thus, the implied consent law should be liberally construed to effect its purpose . . . ." (*Carrey*, *supra*, 183 Cal.App.3d at p. 1270.)

---

being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's privilege to operate a motor vehicle for a period of one year."

15

B

The record shows that after Mellos arrested McKeown for driving under the influence of alcohol, he admonished McKeown by twice reading the first portion of Form DS 367's admonitions, as quoted above, but abandoned efforts to read the remainder of those admonitions after McKeown repeatedly interrupted him. On appeal, McKeown argues the DMV's suspension of his driver's license for one year must be reversed because Mellos did not read *all* of the admonitions on Form DS 367. However, he does not cite any case or other authority stating that a license suspension is invalid unless all of the admonitions are read to an arrested driver.

Although, as McKeown asserts, proper warning of the *consequence of refusing* a chemical test is an element essential to a license suspension (*Daly*, *supra*, 187 Cal.App.3d at p. 261; *Giomi v. Department of Motor Vehicles* (1971) 15 Cal.App.3d 905, 906; *Janusch*, *supra*, 276 Cal.App.2d at p. 196), McKeown does not cite, and we have not found, any language in the implied consent statute that sets forth any express or implied provision requiring that the *entirety* of section 23612's or Form DS 367's admonitions must be read for any license suspension to be valid. Furthermore, the public policy and legislative intent underlying the implied consent law do not support such a requirement. Because there is a strong public policy against driving under the influence of alcohol, we must construe the implied consent statute liberally to accomplish its purpose. (*Carrey*, *supra*, 183 Cal.App.3d at p. 1270.) Accordingly, we should refrain from interfering with enforcement of the implied consent law by imposing greater

16

burdens on law enforcement officers and the DMV for license suspensions than are expressly set forth in that statute. (*Daly*, at p. 261.) Although section 23612 sets forth a number of specific admonitions that an officer "shall" give to a driver arrested for driving under the influence of alcohol (see, e.g., § 23612, subds. (a)(1)(D), (a)(2)(A), (a)(4)), there is nothing in its language that requires *all* of such admonitions to be given for a license suspension under section 13353 to be valid. Rather, based on its underlying public policy and legislative intent, we conclude section 23612 requires a driver to be, at a minimum, admonished of the consequences of refusing to take a chemical test and his or her choice of a breath or blood test to support a license suspension or revocation and, depending on the particular circumstances in each case, certain additional admonitions under section 23612 may be required for a license suspension or revocation.

In the circumstances in this case, there is no reason to require any admonitions over the minimum to support the suspension of McKeown's driver's license. Following McKeown's arrest,[7] Mellos advised him, twice, that: (1) he was required by state law to submit to a chemical test to determine the alcohol content of his blood; (2) he had a choice of taking a breath or blood test; and (3) if he refused to submit to, or failed to complete, a test, his driver's license would be suspended for one year or revoked for two or three years. When Mellos then asked McKeown whether he would take one of those tests, he clearly replied that he would *not* take either a breath test or blood test. Mellos

---

[7] Although McKeown erroneously asserted Mellos did not have reasonable suspicion to stop his vehicle, he does not appear to otherwise challenge the validity of his subsequent arrest for driving under the influence of alcohol.

17

then informed McKeown his driver's license was going to be suspended if he did not submit to a chemical test, and McKeown again stated he would not submit to a breath or blood test. Following an administrative hearing, the DMV suspended McKeown's driver's license for one year for refusing to take a chemical test as required by section 23612. In so doing, the DMV's hearing officer found McKeown had been lawfully stopped and arrested, properly admonished that his driving privilege would be suspended or revoked if he refused to complete the required testing, and refused to complete the chemical test after being requested to do so by Mellos. Based on the record in this case, we conclude the DMV properly found McKeown had been admonished, as required by section 23612, that his driver's license would be suspended if he refused to complete the required breath or blood chemical test.

Although Mellos did not read the entirety of Form DS 367's admonitions, he did, in fact, read those portions of the Form DS 367's admonitions that directly related to the circumstances in McKeown's case and therefore substantially complied with section 13353's requirements for suspension of McKeown's driver's license. Section 13353, subdivision (a), provides: "If a person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's

18

privilege to operate a motor vehicle for a period of one year." There is nothing in section 13353's language requiring that the other admonitions set forth in section 23612 be given before the DMV may suspend the license of a driver who refuses to take a required chemical breath or blood test after being advised by a police officer of that requirement. The additional section 23612 admonitions that Mellos did not read to McKeown from Form DS 367 after he kept interrupting him were not required to be given to support the DMV's suspension of his driver's license in the circumstances of this case.

Those admonitions omitted by Mellos would have advised McKeown that: (1) refusal or failure to complete a test could be used against him in court and could result in a fine and imprisonment if he were convicted of driving under the influence of alcohol; (2) he did not have the right to consult an attorney or have an attorney present before deciding whether to take a test, which test to take, or during the test; and (3) if he did not complete the test of his choice, he must submit to and complete the remaining test.[8] However, McKeown does not argue, much less persuade us, that any of those omitted admonitions were, in fact, material to his decision to refuse to take the required breath or blood test to determine the alcohol content of his blood. On the contrary, based on our review of the record, it is clear McKeown would have refused to take the required test

---

[8]    Mellos also omitted admonitions that related to the revocation of McKeown's driver's license for two or three years *if* he had certain prior offenses or administrative determinations. (§ 23612, subd. (a)(1)(D).) However, because he did not have any prior offenses or administrative determinations, those omitted admonitions were immaterial to the suspension of his license for one year. (Cf. *Daly, supra*, 187 Cal.App.3d at p. 262 [upheld license suspension for six months despite officer's omission of admonition regarding suspension for one year if the driver had a prior conviction].)

19

even had Mellos read to him the entirety of Form DS 367's admonitions. McKeown did not at any point request that he be able to talk to, or have the presence of, an attorney before he decided whether to take one of the tests or which test to take. Furthermore, the record does not show omission of those additional admonitions caused McKeown to be confused regarding the requirement that he take a breath or blood test. Based on the record in this case, there is no evidence showing Mellos's omission of those additional admonitions "had any causal effect whatsoever on [his] refusal to take any test." (*Vann v. Meese* (1986) 186 Cal.App.3d 1070, 1073.) Because the omitted admonitions were immaterial to McKeown's decision to refuse to take the required breath or blood test, we conclude he was substantially admonished as required by sections 23612 and 13353 for suspension of his driver's license for one year. (*Vann,* at p. 1073.)[9]

V

*Remaining Contentions*

Because we dispose of this appeal based on the above grounds, we need not, and do not, address McKeown's additional contentions that the evidence is insufficient to support a finding he was unruly and argumentative during Mellos's reading of the Form DS 367 admonitions and, in any event, such conduct did not excuse Mellos from fully admonishing him pursuant to section 23612 and Form DS 367. The reason for Mellos's

_____

[9]    Although we have found substantial compliance in the circumstances of this case, it nevertheless is the better practice for law enforcement officers to read the entirety of the admonitions set forth in Form DS 367. (*Janusch, supra,* 276 Cal.App.2d at p. 197 ["It is, of course, highly preferable that the warning be stated in the positive terms of the statute . . . ."].)

20

abandonment of attempts to read in their entirety the admonitions set forth on Form DS 367 is irrelevant because those omitted admonitions were immaterial to McKeown's decision to refuse to take the required breath or blood test to determine the alcohol content of his blood. Therefore, whether McKeown was unruly and argumentative or merely interrupted Mellos in a civil manner, McKeown was substantially admonished as required by sections 23612 and 13353 for suspension of his driver's license for one year.

## DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.

21