IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT HEARNE, | § | No. 148, 2017 |
| Defendant Below, Appellant, | § § § | |
| | § | Court Below—Superior Court of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1605006649 (N) |
| STATE OF DELAWARE, | § | |
| Plaintiff Below, Appellee. | § § § | |

Submitted: September 19, 2017
Decided: December 11, 2017

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

**O R D E R**

This 11th day of December 2017, upon consideration of the no-merit brief under Supreme Court Rule 26(c), appellate counsel's motion to withdraw, and the State's response, it appears to the Court that:

(1)     In 2016, the Delaware Division of Family Services reported a possible case of child sexual abuse to the New Castle County Police Department. Detective Charles Levy conducted an interview of the child involved. The child, Theresa, told Detective Levy that she had been sexually abused by her father over an eight-year

period.[1]  Detective Levy conducted an investigation that led to the indictment of the appellant, Robert Hearne, on more than twenty sexual offenses.

(2)    Hearne went to trial before a Superior Court jury in New Castle County and was convicted of seven counts of Rape First Degree and other offenses, including two counts of Continuous Sexual Abuse of a Child.  On March 31, 2017, Hearne was sentenced to seven life terms—one for each rape conviction—and an additional ninety-five years at Level V followed by decreasing levels of supervision.  The Superior Court merged the two convictions of Continuous Sexual Abuse of a Child and sentenced Hearne to thirty-five years at Level V.[2]  This is Hearne's direct appeal.

(3)    On appeal, Hearne's appellate counsel has filed a no-merit brief under Rule 26(c) and a corresponding motion to withdraw.  Hearne has submitted written points for the Court's consideration.  The State has responded to the position taken by Hearne's appellate counsel and the points raised by Hearne and has moved to affirm the Superior Court's judgment.

(4)    When considering a Rule 26(c) brief and an accompanying motion to withdraw, our standard and scope of review is twofold.  First, the Court must be

---

[1] Because of the sensitive nature of this case, the Court has used a pseudonym to refer to the complaining witness.  Del. Supr. Ct. R. 7(d).

[2] *See* Sentencing Tr. at 15 (Mar. 31, 2017) ("As to IN17010371 [Continuous Sexual Abuse of a Child], you're placed in the custody of the Department of Correction for a period of 35 years to be served at Level V; that charge merges with IN17010372 [Continuous Sexual Abuse of a Child] for sentencing purposes.").

2

satisfied that the appellant's counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal.[3]   Second, the Court must conduct its own review of the record to determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[4]

(5)   The State's witnesses included Hearne's former girlfriend, Stephanie Digrerio, and brother, Thearon "Bud" Hearne.  Stephanie and Bud testified about the contents of a video they watched in 2007.  Stephanie testified that she watched the video after finding it in Hearne's car.  On the video, she saw Theresa, at age seven or eight, wearing nothing but "a black thong" and heard a voice, which she recognized as Hearne's, telling the child to "turn around."[5]  Stephanie testified that, after watching a few seconds of the video, she turned it off and took it to Bud's wife.  Stephanie testified that she confronted Hearne a few days later about the video, and that Hearne expressed remorse about making the video and assured her it would never happen again.

(6)   Bud also testified that he watched "just moments"[6] of a video that showed a naked young girl standing near a bathroom shower with a towel draped on her shoulders, and the same girl posing on a bed, wearing "an adult thong that clearly didn't

---

[3] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[4] *Penson v. Ohio*, 488 U.S. at 82.
[5] Trial Tr. at 34–35 (Jan. 19, 2017).
[6] *Id.* at 117.

3

fit."[7] Bud testified that he recognized the rooms in the video as the master bathroom and master bedroom in his mother's house. Bud testified that the video did not show the girl's face, and it did not have sound, but he assumed that the girl was his niece, Theresa, and that Hearne had recorded the video. Bud testified that, after consulting with a deacon from a local church, he decided to burn the video because he "didn't see any touching on the tape," and he "didn't think bringing [the] tape to somebody's attention would have a beneficial value."[8] Bud testified that he confronted Hearne about the video, and that Hearne acknowledged making the video and assured him it was a "one-time thing."[9]

(7) Theresa was sixteen years old at Hearne's trial in 2017. She testified that Hearne began sexually abusing her when she was three or four years old and continued abusing her until she was twelve. Theresa testified that the sexual contact, which started as touching and escalated over time to oral sex and digital penetration, occurred more than one hundred times. Theresa described the abuse as occurring at various locations in Wilmington, including the basement of her parents' house, her paternal grandmother's house, in Hearne's car, and in a motel, where Hearne made her wear lace underwear that was too big for her. Theresa testified that she could not recall Hearne taking photos or videos of her, but she did recall him connecting a camera to a

---

[7] Id. at 120.
[8] Id. at 122.
[9] Id. at 123.

4

television in her grandmother's house and seeing naked photos of herself on the television screen.

(8) Hearne's defense at trial was a complete denial of the charges against him. He testified that he did not touch Theresa in an inappropriate manner or engage in oral sex with her. Hearne admitted that he videotaped Theresa coming out of a shower with a towel wrapped around her and acknowledged that Stephanie and Bud confronted him about the video. But Hearne denied that he intended to videotape Theresa in a sexual act or that the video depicted anything sexual.

(9) The jury found Hearne guilty of seven counts of Rape First Degree, four counts of Unlawful Sexual Contact Second Degree, two counts of Continuous Sexual Abuse of a Child, two counts of Dangerous Crime against a Child, one count of Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision First Degree, and one count of Unlawful Sexual Contact First Degree. The jury acquitted Hearne of one count of Rape First Degree, two counts of Unlawful Sexual Contact Second Degree, and a single count of Sexual Exploitation of a Child.

(10) Hearne has submitted four points on appeal. He contends that "the process [was] tainted" because Theresa's mother, his ex-wife, works for the Superior Court Prothonotary in New Castle County. He claims that he is innocent of the charges against him and that Theresa's trial testimony was untruthful and was coached by Detective Levy and the trial prosecutor. He questions whether the elements of the

5

charges were "fully explained" to the jury, and he complains that the first degree rape charges in the indictment described "the exact same offense."

(11) Hearne's first point on appeal was raised during his jury selection when his lawyer informed the judge—who did not preside over Hearne's trial—that Theresa's mother, Hearne's ex-wife, was employed by the Superior Court Prothonotary in New Castle County. Counsel suggested that the circumstances warranted reassignment of the case to a judge in one of the other two counties in Delaware to avoid the appearance of impropriety. The judge did not know Theresa's mother and proceeded with jury selection as scheduled, but left empaneling the jury and further consideration of Hearne's request to the trial judge.

(12) Before starting trial the following day, Hearne's trial judge informed the parties that, although she did not know Theresa's mother and, to her knowledge, had never interacted with her, she had considered whether her position as a judge in New Castle County warranted her recusal in the case under the disqualification rule in the Delaware Judges' Code of Judicial Conduct.[10]

(13) When faced with a claim of personal bias or prejudice concerning a party, a judge is required to engage in a two-part analysis to determine if recusal is warranted.[11] First, the judge must be satisfied, as a matter of subjective belief, that she

---

[10] *See* Del. Judges' Code of Judicial Conduct R. 2.11 (governing Disqualification).
[11] *Los v. Los*, 595 A.2d 381 (Del. 1991).

6

can hear the matter free of bias or prejudice.[12]  Second, even if the judge believes she is free of bias or prejudice, she must objectively consider whether the circumstances require recusal because of an appearance of bias sufficient to cast doubt on the judge's impartiality.[13]  We review a judge's subjective analysis for abuse of discretion and consider the objective analysis *de novo*.[14]

(14)  Hearne's trial judge determined that, as a matter of subjective belief, she had no personal bias or prejudice whatsoever concerning the case and "specifically concerning the fact that the mother of the alleged victim is an employee of the Court."[15] Second, the trial judge determined that, viewed objectively, the circumstances did not create an appearance of impropriety requiring her recusal.  On appeal, we find no basis to question the trial judge's subjective analysis and no error in her objective analysis. The trial judge did not know Theresa's mother; neither party anticipated calling her as a witness.  Under these circumstances, a reasonable person, fully informed of the facts underlying the grounds on which recusal was sought, would not harbor significant doubts about the trial judge's impartiality in this case.[16]

(15)  In his second point on appeal, Hearne claims that Theresa's trial testimony was untruthful and was coached by Detective Levy and the trial prosecutor.  Hearne

---

[12] *Id.* at 384–85
[13] *Id.* at 385.
[14] *Id.*
[15] Trial Tr. at 5 (Jan. 19, 2017).
[16] *Gattis v. State*, 955 A.2d 1276, 1285 (Del. 2008).

provides no support for his claim and none is in the record. "It has long been our law that the jury is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony."[17] It was within the jury's purview to credit Theresa's trial testimony.

(16) Hearne's third point on appeal questions whether "all the elements [of the] charges were fully explained to the jury," but he does not explain his concern or identify any specific deficiency in the jury instructions. Nevertheless, we reviewed the jury instructions for reversible error and found none. The jury instructions provided the jury with a correct statement of the law and a full explanation of the elements of each offense.

(17) In his fourth point on appeal, Hearne complains that the rape charges in the indictment described "the exact same offense." He is right that the charges were worded identically. For each of the eight counts of first degree rape, the indictment alleged that, between January 1, 2008 and February 1, 2012, in New Castle County, Hearne, who was over age eighteen, intentionally engaged in sexual intercourse with Theresa, who had not yet reached her twelfth birthday.[18] It is not clear whether Hearne's point on appeal is that the charges were duplicative or that the charges lacked specificity, but either way the claim is without merit.

---

[17] *Tyre v. State*, 412 A.2d 326, 330 (Del. 1980).
[18] 11 *Del. C.* § 773(a)(5) (Supp. 2017).

8

(18) A person who is alleged to have committed multiple sexual assaults on the same victim may be charged for each separate act.[19] An indictment is sufficiently specific if it contains a plain statement of the elements of the charges the person is being called upon to defend and the essential facts of the alleged crimes.[20] Hearne does not contend, and the record does not reflect, that the indictment gave him insufficient notice of the rape charges.

(19) Finally, we would be remiss not to address an apparent clerical error in the Superior Court record. The error is in an automated sentence order docketed on May 18, 2017.[21] In addition to stating the thirty-five-year sentence that was imposed for the Continuous Sexual Abuse of a Child convictions that were merged at sentencing,[22] *the May 18 order includes an extraneous twenty-five-year sentence purportedly imposed on the second of those two convictions.*[23] It is not clear why the twenty-five year sentence was added to the sentence order docketed on May 18, 2017, but we assume it is a clerical error. In any event, because it is clear from the record that the twenty-five-year sentence was not imposed at Hearne's sentencing, we will

---

[19] *Windsor v. State*, 2014 WL 4264915 (Del. Aug. 28, 2014) (citing *Feddiman v. State*, 558 A.2d 278, 288 (Del. 1989)).

[20] *Malloy v. State*, 462 A.2d 1088, 1092 (Del. 1983).

[21] *See* Docket at 36, *State v. Hearne*, Del. Super., Cr. ID No. 1605006649.

[22] *Supra* note 2.

[23] *Id.* The twenty-five-year sentence does not appear in the court's prior automated sentence orders docketed on April 7, 2017 and May 4, 2017. *See* Docket at 30, 33, *State v. Hearne*, Del. Super., Cr. ID No. 1605006649.

9

remand this matter to the Superior Court with instructions to issue a corrected sentence order.[24]

(20) With the exception of the error in the sentence order, the Court concludes that Hearne's appeal is "wholly without merit."[25] We are satisfied that Hearne's appellate counsel made a conscientious effort to examine the record and the law and properly determined that Hearne could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of convictions is AFFIRMED. The motion to withdraw is moot. This case is remanded to the Superior Court for corrective action consistent with this Order. Jurisdiction is not retained.

BY THE COURT:

/s/ Gary F. Traynor
Justice

---

[24] Del. Super. Ct. Crim. R. 36. *Gibbs v. State*, 229 A.2d 502, 504 (Del. 1967). *See Smith v. State*, 2008 WL 5008575 (Del. Nov. 26, 2008) (remanding for correction of error in written sentence order). *Accord Donovan v. State*, 1997 WL 597125 (Del. Sept. 23, 1997).
[25] Del. Supr. Ct. R. 26(c).